CHERRY v. CITY OF ROCK HILL.

1. INJUNCTION—DAMAGES—NUISANCE—CITIES AND TOWNS—STREETS. A citizen of a city who resides on a street whose course has been changed by the authorities, and he is thereby compelled to use a more circuitous route to and from his place of business, does not suffer such special and peculiar damage as will enable him to maintain an action against the city for damages or injunction.

2. DAMAGES—CITIES AND TOWNS—STREETS—CONDEMNATION.—Where a city council is authorized by its charter to alter, open, or discontinue streets, and it authorizes a party to change the course of a street, a resident of such street, whose land is not taken for the altered right of way, nor at whose lot the change is made, cannot obtain damages for such alteration under the provisions of the charter, which requires the city council to have assessed and pay damages for private property taken for streets.

3. CONDEMNATION—RIGHT OF EMINENT DOMAIN.—Altering the course of a street is not taking private property for public use, as contemplated in the Constitution.

Before WATTS, J., York, June, 1894. Affirmed.

Action by William J. Cherry against John W. Fewell, mayor, and Ed. E. Poag, Ed. R. Avery, A. J. Thompson, John J. Waters, W. J. Irby, and W. H. Wylie, aldermen, the city council of Rock Hill, on the following complaint:

I. That the plaintiff, William J. Cherry, is a citizen of the said county and State, and a resident of Rock Hill, a city situated in the county and State aforesaid, duly incorporated as such by the laws of said State, with a city council as its municipal head.

II. That the defendants, John W. Fewell, Ed. E. Poag, Ed. R. Avery, A. J. Thompson, John J. Waters, W. J. Irby, and W. H. Wylie, constitute the city council of Rock Hill aforesaid, the first named as mayor and the others as aldermen of said city.

III. That the plaintiff is the owner in fee of the following real estate situated in said city: "All those lots or parcels of land, lying or situate in the town of Rock Hill, county and State aforesaid, beginning at a stake at Park avenue, running thence S. $65\frac{1}{2}$, E. 190 feet to a stake on alley, thence with said alley N. $24\frac{1}{2}$, W. 100 feet to stake, thence N. $65\frac{1}{2}$, W. 190 feet to stake on Park avenue, thence with Park avenue S. $24\frac{1}{2}$, E. 100 feet to the beginning, containing 19,000 square feet, and being designated as lots 13 and 14 of block 20 on map of Oakland;" and that the same was conveyed to the plaintiff by the Rock Hill Land and Town Site Company, subject to the proviso and condition "that no structure that will materially obstruct the view of adjoining proprietors shall be erected within twenty-five feet of Park avenue; and that said William J. Cherry, his heirs or assigns, shall never erect any residence on said premises that shall cost less than $1,500 when completed; and further, that no mercantile or manufacturing business shall ever be conducted on said premises." And that the plaintiff says that in strict compliance with said proviso he has erected a residence upon said lot fronting on the said street, which since said erection he has been occupying as such, his place of business as a

practicing attorney of this Court being about three-quarters of a mile therefrom, in the centre of the city.

IV. That said Park avenue was at the time of the purchase of said lot and it has since continued to be not only a public street of the said city but a public highway of the said county and State leading into said city, it having been regularly laid out as such highway by the county of York at a time when the corporate limits of the said city did not extend as far as plaintiff's said lot.

V. That section II. of the charter of said city is as follows: "Section II. The city council of Rock Hill shall have full power and authority to open new streets in said city, and to close up, widen or otherwise alter those now in use, or which may hereafter be established, whensoever in their judgment the same may be necessary for the improvement or convenience of said city. Should the land owner or owners through whose premises such street or streets may run refuse his or her or their consent to such action of the city council in opening, closing up, widening or altering such street or streets, the said city council shall have the right to take possession of all such land, and remove all obstructions necessary to carry out the provisions of this section, upon paying to the owner or owners of such land such damages as shall be fixed and determined by five freeholders of said city, two of whom shall be chosen by the said city council, two by said land owner or owners, and the fifth by the persons so chosen, and who, before assessing said damages, shall be sworn to do impartial justice between the said city of Rock Hill and the land owner or owners; provided, that in case the land owner or owners through whose premises any proposed street is to be run or to be changed in accordance with the provisions of this section refuse to choose two freeholders as herein provided, after being noticed to that effect, then the city council may select two freeholders for him or her or them, with the same power to act in assessing said damages as if chosen by said

land owner or owners, and the decision of a majority of said freeholders shall be final."

VI. That on the 9th October, 1893, the said city council adopted the following resolution: "That that part of Park avenue passing through the grounds of the Winthrop Normal and Industrial School be closed; provided, that there be no costs accruing from lawsuits or otherwise to city council. And that Winthrop Normal and Industrial School agree, in writing, to make as good streets around their grounds as that part of Park avenue now passing through said grounds. The time in which to build said streets to be stipulated in said written articles of agreement."

VII. That the said city council have not only threatened to carry out said resolution, but their servants and agents have actually commenced to close up said street at the points indicated; being about 225 feet distant from the plaintiff's lot in the direction of the centre of the city and of the plaintiff's place of business; and so the said city council are cutting off the plaintiff and his said lot from the centre of the said city by way of the said street, thus forcing him to make a more circuitous and difficult route, to his great inconvenience personally, and to the great damage to his said lot as a place of residence, to wit: in the sum of $1,000.

VIII. That the said city council have not only refused to have the plaintiff's damages assessed, as per the terms of said section II., but they deny that the plaintiff is entitled to any compensation at all. Nevertheless, the plaintiff avers that the said city council are wholly without authority to close said street; but if they have authority, it may only be exercised after compensation made to the plaintiff, according to the provisions of said section.

IX. That the plaintiff is wholly remediless in the premises, save by the aid of this honorable Court.

Wherefore, the plaintiff prays judgment that the defendants, as the city council aforesaid, be permanently enjoined from closing up said street, and that they be required to

remove such obstructions as they have already made therein, and so abate the nuisance herein complained of; and for such other relief as may be just, together with the costs of this action.

From an order dismissing the complaint, because it did not state facts sufficient to constitute a cause of action, the plaintiff appeals.

*Mr. C. E. Spencer*, for appellant, cites: Con. of 1868, art. 1, sec. 23; 2 Wend., 472; 8 Ib., 85, 486; 6 Pet., 431; Harr. Ch., 404; 4 Paige, 570; 3 Bosw., 124; 14 S. E. R., 380; 67 Ill., 607; 16 A. R., 624; 68 Ill., 394; 44 A. D. 593; 89 A. D., 392; 7 Ind., 38, 9, 470; 68 A. D., 650; 67 A. D., 186; 33 A. D., 497; 30 Neb., 512; 13 N. Y. S., 404; 36 S. C., 445; 38 A. D., 173; 54 A. D., 668; 136 U. S., 121; 25 Mo. Ap., 527; 38 S. C., 308.

*Attorney General W. A. Barber*, contra, cites: 54 Ia., 567; 38 S. C., 308; Rev. Stat., 1166.

March 20, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. Inasmuch as the sole question presented by this appeal is, whether the Circuit Judge, the Hon. R. C. Watts, erred in sustaining a demurrer, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, a copy of the complaint should be incorporated by the reporter in his report of this case. We will, however, first state substantially the allegations of the complaint. In the first and second paragraphs the character of the parties—the plaintiff as a citizen and resident of the city of Rock Hill, and the defendants as mayor and aldermen of said city—are stated. 3d. The allegation is, that plaintiff is the owner in fee of a certain parcel of land in said city, bordering on Park avenue (describing it), and that the same was conveyed to him by the Rock Hill Land and Town Site Company, subject to the proviso and condition "that no structure that

will materially obstruct the view of adjoining proprietors
shall be erected within·twenty-five feet of Park avenue;
and that said William J. Cherry, his heirs or assigns, shall
never erect any residence on said premises that shall cost
less than $1,500 when complete, and, further, that no mer-
cantile or manufacturing business shall ever be conducted
on said premises." And the averment is made that plain-
tiff, in strict compliance with the foregoing proviso, has
erected a residence upon said lot, fronting on the said street,
which he has been occupying as such—his place of busi-
ness, as a practicing attorney, being about three-quarters
of a mile therefrom, in the centre of said city.   4th. That
said Park avenue was, at the time of his purchase of said
lot and has since continued to be not only a public street
of said city, but a public highway of the said county and
State leading into said city, it having been regularly laid
out as such by the proper authorities of the county of York
before the corporate limits of said city were extended over
plaintiff's said lot.   5th. That by one of the provisions of
the charter of the said city it is provided: "The city council
of Rock Hill shall have full power and authority to open
new streets in said city, and close up, widen or otherwise
alter those now in use, or which. may hereafter be estab-
lished, whensoever, in their judgment, the same may be
necessary for the improvement or convenience of said city.
Should the land owner·or owners through whose premises
such street or streets may be run refuse his or their consent
to such action of the city council in opening, closing up,
widening or altering such street or streets, the said city
council shall have the right to take possession of all such
land, and remove all obstructions necessary to carry out
the provisions of this section, upon paying to the owner or
owners of such land such damages as shall be fixed and
determined by five freeholders of said city," &c., the sta-
tute proceeding to provide how such freeholders shall be
chosen.   6th. That on the 9th of October, 1893, the said
city council adopted the following resolutions: "That that

part of Park avenue passing through the grounds of the
Winthrop Normal and Industrial School be closed, pro-
vided that there be no cost accruing from lawsuits or other-
wise to city council.  And that the Winthrop Normal and
Industrial School agree in writing to make as good streets
around their grounds as that part of Park avenue now pass-
ing through said grounds.  The time in which to build
said streets to be stipulated in said written articles of agree-
ment."  7th.  That the said city council have not only
threatened to carry out said resolution, but have actually
commenced to close up said street at the points indicated,
"being about 225 feet from the plaintiff's lot, in the direc-
tion of the centre of the city and of the plaintiff's place of
business; and so the said city council are cutting off plain-
tiff and his said lot from the centre of the said city by way
of the said street, thus forcing him to take a more circuitous
and difficult route, to his great inconvenience personally,
and to the great damage to his said lot as a place of resi-
dence, to wit: in the sum of $1,000.  8th.  That the said
city council have not only refused to have the plaintiff's
damages assessed, under the provisions of the charter of
the city above referred to, but have denied that the plaintiff
is entitled to any compensation at all.  Plaintiff denies the
authority of the city council to close said street; and avers
that, if they have any such authority, it can only be exer-
cised after compensation made to plaintiff under the fore-
going provisions of the charter of the city.  9th.  That the
plaintiff is without remedy save that invoked by this action.
Wherefore, he demands judgment, that said city council be
perpetually enjoined from closing up said street, and that
they be required to remove all such obstructions as they
have already made therein, and so abate the nuisance herein
complained of; and for such other relief as may be just.

The only question being, as we have said, whether the
complaint states facts sufficient to constitute a cause of ac-
tion, our first inquiry is, what is the *gravamen* of the plain-
tiff's complaint?  Manifestly it is that the city council has,

without lawful authority, closed, as it is expressed in the complaint, one of the public streets of the city of Rock Hill, a public highway, whereby the plaintiff has sustained damage, *not* by reason of being denied access to his place of residence or to his place of business, for there is no such allegation in the complaint, but solely because the plaintiff has thereby been forced "to take a more circuitous and difficult route," in going to and from his place of residence to his place of business. It will be observed that while the plaintiff in his complaint speaks of the act of the city council as the closing of Park Avenue, yet the other allegations in the complaint show conclusively that the street was not closed but simply that its route was altered, so that, instead of passing through the grounds of the Winthrop Normal and Industrial School, a public institution established by the State for the wisest and most beneficial purposes, it should pass around those grounds. It will also be observed that there is no allegation that the said street was closed or its route changed at the point where it passes plaintiff's residence or at the point where it passes plaintiff's place of business, but, on the contrary, the allegation is, that it was closed at an intermediate point, "about 225 feet distant from the plaintiff's lot, in the direction of the centre of the city and of the plaintiff's place of business." It is clear, therefore, that the injury of which plaintiff complains is not that special or peculiar injury, differing in kind, and not merely in degree, from that which the public generally sustain, which alone would entitle a private person to maintain an action, either for damages or for an injunction in a case like this; for there is no allegation that the plaintiff either has sustained or is likely to sustain any injury of a special or peculiar character, differing in kind from that to which every other person entitled to use such street would be exposed in passing to and fro over and along said street. This doctrine has been distinctly held in no les than three cases in this State, as applied to actions for damages. *Carey* v. *Brooks*, 1 Hill, 365; *Steamboat Co.* v. *Railroad Co.*,

30 S. C., 539; *S. C. Steamboat Co.* v. *W. C. & A. Railroad Co.*, 46 S. C., 327. And that the same doctrine applies in cases of injunction, may be seen by reference to secs. 522 and 528 of High on Injunctions, 1st edit. Now, as there is no allegation in the complaint that the plaintiff, by reason of the acts of the defendants, has sustained any special or peculiar injury, differing in kind from that which the public generally has sustained, it is obvious that the complaint fails to state facts sufficient to constitute a cause of action either for an injunction or for damages.

In view of the express provision of the charter of the city set forth in the fifth paragraph of the complaint, there can be no doubt that the city council has been invested with "full power and authority to open new streets in said city, and close up, widen or otherwise alter those now in use, or which may hereafter be established, whensoever, in their judgment, the same may be necessary for the improvement or convenience of said city." But the contention of the appellant is, that this power could not be exercised except upon paying damages to the owner of the land through which such streets, over which such power is exercised, may run, to be assessed in the mode prescribed by the charter; and that defendants in this case have not only failed but refused to have such damages assessed. It will be seen, however, that the charter makes provision for the assessment of damages only where the land owner *through whose premises* the street may run, if such land owner refuses his consent to the action of the city council. Before, therefore, the land owner can become entitled to damages, it must appear: 1st. That he has refused his consent to the proposed action of the city council. 2d. That the street which it is proposed to open, close up, widen or otherwise alter, runs *through* the land of such land owner; and neither of these facts are alleged in the complaint. If it should be said that the bringing of this action sufficiently manifests the refusal of the land owner's consent in this case, the answer would be, that the charter clearly implies that the re-

36 —48

fusal of the consent must precede the action of the city council, for it is only after such refusal that the damages must be assessed, upon payment of which the city council is authorized to proceed. See *Tompkins* v. *Railroad Co.*, 33 S. C., 216. But waiving this, which may be regarded as somewhat technical, the failure to allege the other fact, to wit: that the street runs *through* the premises of plaintiff, is very material, and the reason of such a provision is very obvious. For where the street which is to be opened, closed up, widened or otherwise altered, runs *through* the premises of a land owner, such work could not be done without interfering with the rights of property of the land owner, and hence the necessity of providing for compensation, as required by the Constitution. But where, as in this case, it is not alleged that the street in question runs *through* the premises of the plaintiff, and, on the contrary, the allegations of the complaint show that such street does *not* run *through* the premises of plaintiff, there was no necessity for providing for compensation, and accordingly none was provided for, inasmuch as there was no interference with plaintiff's rights of property, especially as the allegations show that there was no change or obstruction made in the street where it passed by plaintiff's property, but the change was made at a point "225 feet distant from plaintiff's lot."

Again, it is contended for appellant that, independently of the charter, the closing of the street, as it is termed, though, as we think, the complaint shows that the street was not closed, but that its route was altered, was the taking of private property which, under the Constitution, could not be done without the consent of the owner, or without just compensation made therefor. But we do not think that the alteration made in this street at a point where it did not adjoin plaintiff's property can be regarded as the taking of private property for public use. So far as appears from the allegations of the complaint, the only right which the plaintiff had in the street in question was the right, to which in common with all other citizens

he was entitled, of using this street as a public highway. That right is not, in our judgment, private property protected by the constitutional provision which is invoked. In the case of *East St. Louis* v. *O'Flynn*, 119 Ill., 200, reported also in 59 Am. Rep., 795, the question was, whether a lot owner in said city could maintain an action against the city for closing up, or, as it is there termed, vacating a certain street upon which the lot owner's residence fronted, but there, as here, the street was closed or vacated at a point some distance from where it passed plaintiff's residence. There, as here, the point was made that this was a taking or damaging private property for public use without just compensation, and was, therefore, forbidden by the provision of the Constitution of Illinois, that "private property shall not be taken or damaged for public use without just compensation." The Court, however, held otherwise, saying: "It is not true, in fact or in law, that defendant has either taken or damaged plaintiff's property for public use. It has taken no property for public or any other use. That of which complaint is made is vacating certain streets. In no sense can that act be construed as either taking or damaging private property for public use, as those terms are used in the Constitution." If that be the rule under the Constitution of Illinois, which goes further than our Constitution in forbidding not only the taking but the *damaging* of private property, how much more should it be the rule here. The Court, in that case, uses language which seems very appropriate to this case: "The inconvenience that would be occasioned to plaintiff in going from the street in front of his house to a particular part of the city, on account of vacating and closing up certain streets and alleys in another block, is the 'same kind' of damage that would be sustained by all other persons in the city that might have occasion to go that way, and although the inconvenience he may suffer may be greater in degree than to any other person, that fact would not give him a right of action." Indeed, if the plaintiff could maintain this

action, we see no reason why every other person entitled to use Park avenue as a public highway—certainly every other person owning property on said street—would not be entitled to maintain a similar action, and this would amount, practically, to a denial of the right in the city council of Rock Hill to exercise the power expressly conferred by the General Assembly. It seems to us, therefore, that in no point of view was there any error on the part of the Circuit Judge in sustaining the demurrer.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.