597 S.E.2d 814

**John A. HARDIN and Martha Hardin Curran, as Trustees of Marital Trust 2 under the Will of Martha S. Hardin, Deceased, Respondents,**

v.

**The SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Appellant.**

No. 3786.

Court of Appeals of South Carolina.

Heard April 8, 2004.

Decided April 26, 2004.

Rehearing Denied June 28, 2004.

---

Beacham O. Brooker, Jr., of Columbia, for Appellant.

David A. White, of Rock Hill, for Respondents.

ANDERSON, J.:

John A. Hardin and Martha Hardin Curran (collectively, "Respondents") filed a complaint against the South Carolina Department of Transportation ("SCDOT") in inverse condem-

nation seeking compensation for the loss in value to two[1] tracts of land they owned on the north side of Dave Lyle Boulevard on either side of its intersection with Baskins and Garrison Roads in Rock Hill, South Carolina, because of the construction of a median barrier in the center of Dave Lyle Boulevard. The trial was bifurcated. A bench trial was held on the sole issue of whether the median's construction deprived Respondents of a property right entitling them to just compensation. The trial judge ruled that a taking had occurred and ordered a separate trial to assess just compensation. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Completed in 1974, Dave Lyle Boulevard is a high-speed, divided, controlled-access, four-lane highway connecting Interstate 77 with downtown Rock Hill. Right of way for the highway was acquired from Respondents' predecessor in title in 1971. The highway was planned and constructed to permit no private entrances and a limited number of public road intersections in order to maintain a high level of service and safety.

Prior to construction of Dave Lyle Boulevard, two local roads, Baskins Road and Garrison Road, intersected in an "X" pattern. During construction of Dave Lyle Boulevard, these roads were joined on each side of the new highway to provide a shared single entry point. A break in the controlled-access line and in the highway median barrier accommodated the joined Baskins–Garrison entry point.

In 1992, the City of Rock Hill requested permission from the SCDOT for a new intersection about 1,000 feet east of the Baskins–Garrison/Dave Lyle intersection to accommodate a new road that would connect the Rock Hill Industrial Park with York Technical College. Because of the limitation on cross streets, the SCDOT responded that a new intersection would require that the existing Baskins–Garrison/Dave Lyle intersection be closed. Several area landowners, including Respondents, protested. A public hearing was held on the matter. After the hearing, SCDOT determined that, because

---

1. At trial, Respondents withdrew their claims as to three additional tracts of land.

right turns were less disruptive than left turns, only the median would be closed, leaving the intersections on each side "right turns in and [right turns] out" only. In 1998, a median barrier was constructed across Dave Lyle Boulevard that prevents vehicular traffic from crossing over the highway at that point. This median barrier was erected in the middle of Dave Lyle Boulevard at the point which Baskins and Garrison Roads cross over the highway.

Respondents own two parcels of property that abut Baskins and Garrison Roads. Due to the newly erected barrier, eastbound travelers on Dave Lyle can no longer turn left across the highway to access Respondents' properties and travelers exiting Respondents' properties can no longer cross the highway to access the eastbound lane.

Respondents asserted they were entitled to just compensation for any loss in value of their properties caused by the median. The trial judge agreed and ruled:

> At the hearing in this case, Plaintiffs adduced convincing evidence that Plaintiffs' Tracts A and B were specially injured by the closing of Baskins and Garrison Roads, *because they possessed the unique characteristic of directly abutting the intersection of a controlled access highway.* I conclude that Plaintiffs' [sic] are entitled to a jury trial for the determination of just compensation due. (Emphasis added).

## ISSUES

I. Did the trial court err in finding that Respondents had a valid property right infringed upon by the construction of the median barricade?

II. Did the trial court err in excluding the official highway plans for the project underlying the decision in *Gray v. South Carolina Dep't of Highways & Pub. Transp.?*

## STANDARD OF REVIEW

The trial judge bifurcated the proceedings below and conducted a trial in equity solely to determine the question of whether Respondents were deprived of a property right entitling them to just compensation. We note that the issue of whether the proceeding conducted by the Circuit Court in a

case of this type is equitable or legal is novel in South Carolina. We conclude that the proceeding is equitable in nature and adopt the reasoning of the Supreme Court of Florida in *Palm Beach County v. Tessler*, 538 So.2d 846 (Fla.1989). *Tessler* explicated:

> Actually, in an inverse condemnation proceeding of this nature, the trial judge makes both findings of fact and findings of law. As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity. Should it be determined that a taking has occurred, the question of compensation is then decided as in any other condemnation proceeding.

*Id.* at 850. *Accord Department of Pub. Works & Bldgs. v. Wilson & Co.*, 62 Ill.2d 131, 340 N.E.2d 12 (1975); *Brock v. State Highway Comm'n*, 195 Kan. 361, 404 P.2d 934 (1965); *Guerard v. State*, 220 N.W.2d 525 (N.D.1974).

■ On appeal from an action in equity, the appellate court has authority to find facts in accordance with its own view of the preponderance of the evidence. *Williams v. Wilson*, 349 S.C. 336, 563 S.E.2d 320 (2002); *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## *LAW/ANALYSIS*

### I. Valid Property Right

■ SCDOT argues the trial court erred in its holding that the erection of the traffic barricade at issue infringed on a valid property right of Respondents and entitled them to a trial for the ascertainment of just compensation. We disagree.

We address the issue of when an action regarding the alteration of public thoroughfares may warrant just compensation to those owners whose property is negatively affected by the change.

Our analysis begins with the case of *Cherry v. Fewell*, 48 S.C. 553, 26 S.E. 798 (1897). In *Cherry*, the city of Rock Hill altered a road approximately 225 feet from plaintiff's home,

but not directly adjoining his property. The plaintiff alleged he was entitled to compensation because this road closing required him "to take a more circuitous and difficult route, to his great inconvenience personally, and to the great damage to his said lot as a place of residence." *Id.* at 559, 26 S.E. at 800. The Supreme Court affirmed the Circuit Court's demurrer, finding a mere claim of inconvenience

> "in going from the street in front of his house to a particular part of the city, on account of vacating and closing up certain streets and alleys *in another block,* is the 'same kind' of damage that would be sustained by all other persons in the city that might have occasion to go that way, and although the inconvenience he may suffer may be greater in degree than to any other person, that fact would not give him a right of action."

*Id.* at 563, 26 S.E. at 801 (quoting *City of E. St. Louis v. O'Flynn,* 119 Ill. 200, 10 N.E. 395 (1887)) (emphasis added). The Court's holding was predicated on the fact that plaintiff's claim did not allege any other "special or peculiar injury, differing in kind, and not merely in degree, from that which the public generally sustain[s], which alone would entitle a private person to maintain an action . . . for damages." *Cherry,* 48 S.C. at 560, 26 S.E. at 800.

*Cherry* established the basic rule in South Carolina that an alteration of a public roadway adjoining plaintiff's property constitutes a taking of private property for public use within the constitutional prohibition. However, when this alteration takes place on a part of the roadway not abutting the citizen's property, that citizen must allege and prove "special or peculiar injury" to receive compensation. *Id.* A mere allegation of greater inconvenience than the general public, without more, is not enough to prove this "special or peculiar injury." *Id.*

From the general holding of *Cherry* emerged the more specific rule of *City of Rock Hill v. Cothran,* 209 S.C. 357, 40 S.E.2d 239 (1946). In *Cothran,* the city closed a portion of Laurel Street that, while not abutting appellants' property, was a portion of roadway on the same block (within one intersection) as appellants' property. This closing essentially transformed the street abutting appellants' property from a major thoroughfare directly connecting the property to the

city's major traffic routes to a cul-de-sac. *Cothran,* 209 S.C. at 369, 40 S.E.2d at 244. The Court recognized the application of the *Cherry* rule, namely that, in this situation, the appellants were not entitled to compensation unless they had suffered a special injury. *Id.* at 368, 40 S.E.2d at 243.

The *Cothran* Court inculcated:

The right of a landowner to recover damages because of the vacation of a street depends on the location of his land with reference to the street vacated, or the part of the street vacated, and the effect of such vacation on his rights as an abutting owner. It is well settled that an owner is not entitled to recover damages unless he has sustained an injury different in kind and not merely in degree from that suffered by the public at large. If it appears that there is a special injury, the owner may recover damages notwithstanding his property does not abut, as in this case, on the part of the street vacated, because this amounts to a 'taking.' *McQuillin Munic. Corp.,* 2d ed., Vol. 4, Sec. 1525; *Houston v. Town of West Greenville,* 126 S.C. 484, 120 S.E. 236.

**In the absence of special injury, no recovery will be allowed. The test is, not whether the property abuts, but whether there is a special injury, and the first practical question which presents itself is whether one whose property does not abut immediately on the part of the street vacated—the part vacated being in the same block between his property and the next connecting cross street—is so specially injured as to be entitled to recover compensation on the ground that his access is cut off in one direction, but not in the opposite direction.**

We held in *Houston v. Town of West Greenville,* 126 S.C. 484, 120 S.E. 236, that the right of an abutting landowner to passage at least to the next intersection is a substantial property right; that such right is not conditioned on the use of the street in common with the public generally, and that the closing of the street was an interference with this right and a 'taking' of property within the meaning of the constitutional provisions.

In the case of *Cherry v. City of Rock Hill,* 48 S.C. 553, 26 S.E. 798, it did not appear that the plaintiff's land was in the

block along which a portion of the street was vacated; the inference to be drawn from that case, as reported, is that such was not the case. For that reason, the principal [sic] announced in the *Cherry* case has very little application here, where the appellants' property abuts upon a block a portion of which is vacated between it and the next street intersection. **It is not a question whether the land adjoins the vacated portion or not, but rather will its value be impaired if deprived of one of the immediate means of access to it.**

*Id.* at 368–69, 40 S.E.2d at 243–44 (emphasis added); *see also Mosteller v. County of Lexington*, 336 S.C. 360, 365 n. 2, 520 S.E.2d 620, 623 n. 2. (1999) (reaffirming the *Cothran* rule but finding it inapplicable to that case); *Gray v. South Carolina Dep't of Highways & Pub. Transp.*, 311 S.C. 144, 151, 427 S.E.2d 899, 903 (Ct.App.1992) (quoting *Cothran*, the " 'right of a landowner to recover damages because of the vacation of a street depends on the location of his land with reference to the street vacated, or the part of the street vacated, and the effect of such vacation on his rights as an abutting owner.' ").

■ It is undisputed that Respondents own properties that abut the joined Baskins and Garrison Roads. The median barrier erected by SCDOT altered the existing intersection. The construction of the barrier severely limits Respondents' access. The fact that Respondents have free passage to the westbound lane of Dave Lyle Boulevard is a factor to be considered in estimating the damages to be awarded and not in determining the existence of this valid property right. *See Cothran*, 209 S.C. at 370, 40 S.E.2d at 244.

■ According to SCDOT, a state may curtail, regulate, or altogether cease traffic on public roads and highways as a valid exercise of the State's police power without liability to any landowner or member of the public. *See South Carolina State Highway Dep't v. Carodale Assocs.*, 268 S.C. 556, 561, 235 S.E.2d 127, 128 (1977) ("A landowner has no vested right in the continuance of a public highway.... [T]he State is under no duty to maintain a minimum level of traffic flow."); *South Carolina State Highway Dep't v. Wilson*, 254 S.C. 360, 365, 175 S.E.2d 391, 394 (1970) ("[T]here is a distinction between the exercise of the police power and the exercise of the power of eminent domain; that just compensation is

required in the case of the exercise of eminent domain but not for the loss by the property owner which results from the constitutional exercise of the police power."). We are not persuaded by SCDOT's argument or cited authority. While the police powers of the State naturally allow a broad range of actions to ensure public safety which do not *per se* "require" that all negatively affected property owners be compensated, the exercise of police powers will never be allowed to violate Article I, section 13 of the South Carolina Constitution, which provides that private property shall not be taken for public use without just compensation. *See Gray,* 311 S.C. at 147, 427 S.E.2d at 901. *Cothran* is rooted in the principle that "the deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a taking as though the property was actually appropriated to the public use." *Wilson,* 254 S.C. at 366, 175 S.E.2d at 395. There is no distinction between taking and damaging and the least damage to property constitutes a taking within the purview of the Constitution. *Id.* "Any suggestion that most takings of property are not compensable merely because they have safety as a purpose would be untenable." *Gray,* 311 S.C. at 147, 427 S.E.2d at 901.

The erection of the median barrier is an interference with a valid property right of the Respondents protected by the Constitution. Respondents presented the testimony of two expert witnesses in regard to the "special injury" to Respondents' Tracts A and B by the closing of the median. Based on the testimony of the expert witnesses and the principles of law articulated in *Cherry, Cothran, Mosteller,* and *Gray,* we conclude Respondents suffered a constitutional taking. Concomitantly, the trial court did not err in granting Respondents a jury trial for the determination of just compensation due.

## II. Consideration of Plans not Referenced in a Prior Published Opinion

■ SCDOT maintains the trial court erred in excluding as evidence the official highway plans for the project underlying the decision in *Gray v. South Carolina Dep't of Highways & Pub. Transp.,* 311 S.C. 144, 427 S.E.2d 899 (Ct.App.1992). SCDOT asserts that, since these documents are public records, they should have been admitted as an exception to the hearsay rule. *See* Rule 803(8), SCRE. We disagree.

SCDOT sought to enter the highway plans as evidence of the facts this Court considered when deciding *Gray* in 1992, ostensibly because "the actual decision is somewhat confusing." This evidentiary foundation drastically fails to establish the relevance of the plans at issue. There is no reference whatsoever to the offered plans in this Court's *Gray* opinion. Further, there was no evidentiary foundation presented on which to determine the plans accurately reflected the evidence considered by the Court in *Gray* or even the road conditions existing at the date of the taking in *Gray*.

■ It would be improper for the trial court to consider this extraneous evidence, not referenced on the record in *Gray*. A ruling under the purely speculative guise that this Court "must have" considered identical public records in reaching its decision would be erroneous. Extrinsic evidence not included in or clearly referenced by a prior appellate court opinion is not relevant evidence to a later case if it is presented merely to better explain that prior decision. Evidence that is not relevant to a case is not admissible. Rule 402, SCRE. The trial judge properly excluded the evidence.

### CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

BEATTY and KITTREDGE, JJ., concur.