605 S.E.2d 563

**Melvin H. MOWRER, Appellant,**

v.

**CHARLESTON COUNTY PARK AND RECREATION COMMISSION and Charleston County, Respondents.**

No. 3881.

Court of Appeals of South Carolina.

Oct. 25, 2004.

Justin O'Toole Lucey, of Mt. Pleasant, for Appellant.

Henry P. Wall, Warren C. Powell, Jr. and Joey R. Floyd, of Columbia, for Respondents.

GOOLSBY, J.

Melvin H. Mowrer appeals a directed verdict for the Charleston County Park and Recreation Commission and Charleston County (collectively "Defendants") in his lawsuit arising from an alleged inverse condemnation of his property. We reverse and remand.

### FACTS AND PROCEDURAL BACKGROUND

Mowrer and his family own two adjacent properties located at 525 and 529 Mill Street in the town of Mount Pleasant, South Carolina. Mowrer and his wife purchased 525 Mill

Street in 1987. Their house is located at Shem Creek and overlooks the marsh and water. Mowrer owns 529 Mill Street with his brother.

Both properties are located near the intersection of Simmons and Mill Streets. They are also close to Shem Creek Landing, a boat ramp where boats on trailers are put into and pulled from Shem Creek. Shem Creek Landing and a nearby parking lot are owned by the County and leased to the Commission.

When the Mowrers purchased their home, Shem Creek Landing was a small, simple boat ramp and unsuitable for large boats. Both Mill and Simmons were originally two-way streets. Moreover, the Mowrers could access Coleman Boulevard, a main thoroughfare, by driving from their driveway directly onto Mill Street.

In 1992, the Commission approved a $34,000,000 bond issue for public works projects. One of the projects, for which $3,000,000 from the bond issue had been allocated, failed to go forward. At the request of the Charleston County Council, the Commission took over all the boat landings in the county, with the agreement that the previously allocated $3,000,000 would be used on new boat ramps. In addition, the County provided an additional $200,000 to the Commission for this responsibility.

Prior studies had recommended closing Shem Creek Landing because of its small size and deplorable condition. The South Carolina Department of Natural Resources and the Town of Mount Pleasant, however, had already begun redesigning the landing before the Commission became involved. The Commission eventually hired an engineer to design and reconfigure the landing.

The engineer submitted a number of landing designs to the Commission. Some plans included closing off Mill Street while others did not. Similarly, the plans varied as to whether Simmons Street would remain a two-way street.

The renovation plans chosen by the Commission initially called for the condemnation of both Mowrer properties. The Mowrers disagreed with the Commission's appraisal values and obtained second appraisals at the Commission's expense.

These appraisals assigned higher values to both properties. Defendants opted not to pay the higher amounts and proceeded with the renovation of the boat ramp by working around the Mowrer properties. The project was approved by the Town of Mount Pleasant and was completed in the late 1990s. The parties stipulated that the Commission designed and constructed the improvements and made the changes to the boat landing at Shem Creek.

As a result of the expansion of the boat ramp, Simmons Street is used to queue up boaters for the landing. This has resulted in vehicles sometimes being parked in front of the Mowrers' driveway curb cuts, thus restricting the Mowrers' access to their properties. In addition, the Mowrers cannot access Simmons Street from the front of their house because the road has raised curbs that make it one-directional in the opposite way. Also, a median built in connection with the project blocks the Mowrers' direct access to Mill Street. The Mowrers' driveways now terminate in the boat landing itself, requiring them to go through the boat ramp parking lot to access Mill Street.

To reach Coleman Boulevard, the Mowrers must now exit their driveway into the parking lot and turn right onto Scott Street before finally making a left turn onto Mill Street. If any boaters are backing out while the Mowrers attempt to go through the parking lot, the Mowrers have to wait for an opportunity to drive forward. Compounding the problem is the fact that one of the Mowrer properties has access to the street only because the Mowrer family owns the adjacent lot.

The enhanced landing now attracts more people with larger boats. In addition to traffic congestion, the increased use of the boat ramp has resulted in more noise, fumes, and litter. An appraiser estimated that, because of the boat ramp expansion, the Mowrer properties lost one third of their value.

Mowrer sued the Commission and the County, alleging their actions constituted a taking, an inverse condemnation, and a nuisance.[1] In their responsive pleadings, Defendants denied the allegations of the complaint and raised additional defenses, including waiver, failure to exhaust administrative remedies, and immunity from suit.

---

1. Both Mowrer's wife and brother executed assignments to Mowrer for the prosecution of this action.

Mowrer later moved for partial summary judgment, arguing the blocking of his access to Mill Street constituted a taking as a matter of law. On the day the trial was to begin, after a jury was drawn but before presentation of the testimony, the trial court denied the motion.

At the conclusion of the testimony, the trial court directed a verdict for Defendants. The trial court also denied Mowrer's post-trial motions.

## LAW/ANALYSIS

■ 1. Mowrer argues the trial court erred in directing a verdict for Defendants on his inverse condemnation claim. We agree.

■ Article I, Section 13 of the South Carolina Constitution prohibits the taking of private property for public use without the payment of just compensation.[2] This provision "extends to all cases in which any of the essential elements of ownership has been destroyed *or impaired* as the result of the construction or maintenance of a public street." [3] In South Carolina, "an obstruction that materially injures or deprives the abutting property owner of ingress or egress to and from his property is a 'taking' of the property, for which recovery may be had." [4] Moreover, "[t]he fact that other means of access to the property are available affects merely the amount of damages, and not the right of recovery." [5]

■ "The elements of an inverse condemnation are (1) an affirmative, positive, aggressive act on the part of the govern-

---

2. *See* S.C. Const. art. I, § 13 ("Except as otherwise provided in this Constitution, private property shall not be taken ... for public use without just compensation being first made therefor.").

3. *Sease v. City of Spartanburg*, 242 S.C. 520, 524–25, 131 S.E.2d 683, 685 (1963) (emphasis added).

4. *South Carolina State Highway Dep't v. Allison*, 246 S.C. 389, 393, 143 S.E.2d 800, 802 (1965); *see also* 29A C.J.S. *Eminent Domain* § 97, at 268 (1992) ("[A]ny occupation or use of a street or highway for public use which obstructs it so as to destroy or materially impair the easements of an abutting owner is a taking of, or injury to, private property entitling such owner to compensation, even though done by public authorization.").

5. *Allison*, 246 S.C. at 393, 143 S.E.2d at 802.

mental agency, (2) a taking, (3) the taking is for a public use, and (4) the taking has some degree of permanence."[6] This court has recently held that the erection of a median barrier could be an actionable interference with a constitutionally protected property right of an abutting landowner.[7]

In granting the directed verdict, the trial court held Mowrer failed to prove that Defendants had the authority to commit the acts on which his complaint was based.[8]

Although there is authority that only a party with eminent domain power can be sued for inverse condemnation, there is also authority to the contrary, i.e., that "[a]s long as the state acts through one of its arms in such a way as to deprive an individual of his property for public use, it is irrelevant whether the state arm doing the actual taking has eminent domain power."[9]

Case law from this jurisdiction would seem to indicate that South Carolina follows the latter view.[10] Moreover, we find

---

6. *Gray v. South Carolina Dep't of Highways & Pub. Transp.*, 311 S.C. 144, 149, 427 S.E.2d 899, 902 (Ct.App.1993).

7. *Hardin v. South Carolina Dep't of Transp.*, 359 S.C. 244, 249–54, 597 S.E.2d 814, 816–19 (Ct.App.2004).

8. The trial court appeared to rely on a tenet of the South Carolina Tort Claims Act that liability is founded on acts that are within a governmental defendant's scope of official duty. *See* S.C.Code Ann. § 15–78–50(a) (Supp.2003) ("Any person who may suffer a loss proximately caused by a tort of the State, an agency, a political subdivision, or a governmental entity, and its employee acting within the scope of his official duty may file a claim as hereinafter provided."). This reliance was misplaced. At issue here is not a *tort* committed by the government against an individual but the *taking* by the government of private property for public use without the payment of just compensation. Because the right to compensation for such a taking is a constitutional right predating the Tort Claims Act, it cannot be altered by statute. *See, e.g., Ins. Fin. Servs. v. S.C. Ins. Co.*, 282 S.C. 144, 147, 318 S.E.2d 10, 11 (1984) (holding an automobile insurer's contractual right to terminate its agents was protected by the state and federal constitutions and therefore could not be altered by subsequent statutory law).

9. 29A C.J.S. *Eminent Domain* § 386, at 761 (1992).

10. *See South Carolina State Highway Dep't v. Moody*, 267 S.C. 130, 136, 226 S.E.2d 423, 425 (1976) (holding a landowner whose property was

persuasive the reasoning in *Fountain v. Metropolitan Atlanta Rapid Transit Authority,* wherein the Eleventh Circuit Court of Appeals held that "[a]s long as the state acts through one of its arms in such a way as to deprive an individual of his property for public use, it is irrelevant whether the state arm doing the actual taking has eminent domain power." [11] In so holding, the court gave the following explanation:

> If a private party were unable to seek redress under the just compensation clause when an official agency acts outside its statutory powers and takes property for public use, the state would be able to escape liability under the just compensation clause by taking property through agencies without statutory powers of eminent domain. We think that the threat of this kind of shell game ought to be avoided.... [12]

Based on this reasoning, we hold that whether Defendants had the authority to commit the acts about which Mowrer has complained is not relevant to the question of whether these acts amounted to an unconstitutional taking of his property for public use. The fact that the Commission lacked eminent domain power did not render its affirmative, positive, aggressive acts concerning the Mowrer properties any less a taking within the meaning of Article I, Section 13 of the South Carolina Constitution. It was therefore an error of law to direct a verdict against Mowrer on the ground that he did not name the Town as a defendant.

2. Defendants argue that a directed verdict in their favor should be affirmed because Mowrer failed to prove the elements of inverse condemnation. We decline to address this argument[13] and note that, since the present case was tried,

---

damaged by the government without having been condemned may bring an inverse condemnation "against the contractor, or against the highway department, or against the two, depending on the facts").

**11.** *Fountain v. Metropolitan Atlanta Rapid Transit Auth.,* 678 F.2d 1038, 1043–44 (11th Cir.1982).

**12.** *Id.* at 1044.

**13.** *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (stating an appellate court may not rely on Rule 220(c), SCACR, to affirm a judgment "when the court believes it would

there has been at least one appellate decision in this State that appears relevant to this issue.[14]

■ 3. We decline to address Mowrer's arguments that he was entitled to an order of summary judgment and a directed verdict. The denial of summary judgment is not appealable, even after final judgment,[15] and the record does not include Mowrer's directed verdict motion.[16]

**REVERSED AND REMANDED.**

ANDERSON, J., and CURETON, A.J., concur.

---

be unwise or unjust to do so in a particular case"). In a footnote, the supreme court added that the appellate court "may or may not wish to address [additional sustaining] grounds when it reverses the lower court's decision." *Id.* at 420 n. 9, 526 S.E.2d at 723 n. 9.

14. *See Hardin v. South Carolina Dep't of Transp.*, 359 S.C. 244, 597 S.E.2d 814 (Ct.App.2004) (affirming the trial court's determination that the respondents were entitled to just compensation for the loss in value of their properties caused by the closing of two roads at an intersection).

15. *Silverman v. Campbell*, 326 S.C. 208, 211, 486 S.E.2d 1, 2 (1997).

16. *See Harkins v. Greenville County*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (noting the appellant has the burden of presenting an adequate record on appeal).