7813

## BRAMLETT v. CITY COUNCIL OF GREENVILLE.

1. Pleadings—Cities and Towns—Streets—Estoppel.—Under the charter of the city of Greenville the only way to test the legality of a claim for damages for changing the grade of a street is by injunction against the charter proceeding to assess the damages and where such action is begun and withdrawn under an agreement to submit to a jury in the Circuit Court the issue the commissioners would pass on, no answer on the part of the city is necessary as the only issue is the amount of damages, nor could the issue of estoppel be properly decided in such trial.

2. Cities and Towns—Streets—Condemnation—Damages.—Under said charter a citizen damaged by having the sidewalk abutting his property lowered for a cement pavement is only entitled to the difference, if any, between the damages to his property and the benefits accruing to it from such sidewalk.      .

3. IBID.—IBID.—DAMAGES.—A statement or agreement made by the mayor to or with the citizen is not conclusive of the matter.

Before WATTS, J., Greenville, June, 1910.   Reversed.

Action by John T. Bramlett against City Council of Greenville.   Defendant appeals.

*Mr. Wm. G. Sirrine,* for appellant, cites: *Right of city to file answer:* 64 S. C. 438.

*Mr. Wilton H. Earle,* contra, cites: *What question would have gone to commissioners:* 64 S. C. 440; 84 S. C. 196. *The original petition for sidewalk properly ruled out:* 80 S. C. 330.

March 11, 1911.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The following agreed statement of facts shows the manner in which the questions made by the appeal arose: "On September 3d, 1907, the plaintiff, John T. Bramlett, through his attorney, Wilton H. Earle, served notice on the City Council of Greenville that he desired an arbitration, under the provisions of the charter then in effect, of a claim against the city amounting to three hundred dollars, for alleged damages to his property by the changing of grade of Hampton avenue in the year 1906.   The said lot is at the northwest corner of Hampton avenue and Whitner street, and has a frontage of one hundred and nine feet. The city of Greenville declined to pay the claim, and procured from the Circuit Court an injunction restraining the plaintiff from any proceedings until he first showed liability on the part of the city.   In the complaint for an injunction the city alleged that the raising of the sidewalk had not damaged the property of the plaintiff herein, that the city was not liable for any damage, and claimed estoppel against

the plaintiff herein. Upon plaintiff answering the injunction proceeding, there was an order of reference to the master of Greenville county to determine the law and the facts and to report same to the Circuit Court. Subsequently the city voluntarily withdrew the injunction proceeding, and the parties entered into the following waiver or arbitration: 'We hereby agree to waive an arbitration, as provided by section 30 of the charter of Greenville, which charter was in force at the time of the alteration for which damages are claimed in this case, and to submit the same questions to a jury in the Court of Common Pleas, which would have been submitted to the commissioners in this case, had not arbitration been waived as provided in said section.'

"The case was tried on June 30, 1910, before Hon. R. C. Watts, Circuit Judge, who instructed the jury to find a verdict for the plaintiff for one hundred and thirty-six dollars and forty cents. Judgment was thereafter entered up by the plaintiff, and this is an appeal from the judgment, notice having been served in due time. When the case was called for trial, the defendant asked leave of the Court to file a pleading in the nature of an answer, which was as follows:

" 'The City Council of Greenville denies that it has damaged the property of the plaintiff, John T. Bramlett, or that it is liable to him in any sum whatsoever, and asks that the claim be dismissed with costs.

" 'On December 22, 1885, the General Assembly for the State of South Carolina passed an Act incorporating the defendant, and among other powers granted, section 30 thereof provided as follows: "That the said city council shall have power and authority to close all such roads, streets and ways within the said city as they may deem necessary, by sale of the freehold therein, either at private or public sale as they may adjudge best for the interest of said city; and that they shall have power and authority to lay out, adopt, alter, widen and open all such streets, roads and ways as they

may from time to time deem necessary for the improvement and convenience of the said city : *Provided,* That the owners of the land over which any such road, street or way may pass, and any person damaged from the closing or by the altering of any such road, street or way, shall be duly compensated therefor by the city council; and whenever any road, street, or way is to be laid out, closed or widened, in case the said city council and owners of land over which the same shall pass, or the person damaged by the closing or altering as aforesaid, cannot agree upon the amount of compensation to be paid to such owner or persons, the same shall be assessed by three commissioners to be appointed, one by the city council, one by the land owner or person damaged, and the third by the two commissioners thus appointed; and in case any landowner shall neglect or refuse to appoint a commissioner within five days after notice to do so, then the chairman of the board of county commissioners of the county of Greenville shall appoint a commissioner, who, with the one appointed by the city council, shall select the third commissioner : *Provided,* That either party may appeal from said assessment to the Court of Common Pleas for said county, by serving written notice of such appeal upon the other party within five days after such assessment shall have been made, when the issue of value shall be submitted to a jury." The said act can be found in Statutes of South Carolina, volume XIX, page 106, reference to which is hereby craved. Said section was a part of the charter of the city of Greenville at the time of the alteration and change of grade hereinafter referred to.' "

The first question is whether the Circuit Court was in error in excluding the proposed answer. The proper method of testing the legal right of Bramlett to have the question of compensation submitted to the commissioners named in the act was by the action of injunction which the city of Greenville instituted against him. The legal right to compensation could not be tried before the com-

missioners. *Greenville* v. *Mauldin,* 64 S. C. 438, 42. S. E. 200; *Greenville* v. *Earle,* 80 S. C. 321, 60 S. E. 1117. It follows that by its voluntary withdrawal of the action for injunction and agreement "to submit the same questions to a jury in the Court of Common Pleas which would have been submitted to the commissioners in this case had not arbitration been waived, as provided in said section," the city council waived the issue as to the legal right of Bramlett to have compensation for damages assessed under the statute, and could thereafter raise no issue except the question of fact whether the plaintiff had been damaged, and if so to what amount. No pleading was necessary to raise that issue. The answer was therefore properly excluded.

For the same reason the defendant could not complain of the exclusion of the petition signed by the plaintiff for a cement sidewalk in front of his lot which was offered to show that Bramlett was estopped from claiming damages. The sole question before the Court was the question of fact as to the amount of damage, if any; the plea of estoppel went to the legal right to have the question of compensation considered at all, and was waived by the withdrawal of the injunction proceedings.

Preliminary to the consideration of the other questions made by the appeal, it is important to observe that section 30 of the charter of the city of Greenville above quoted does not require that the commissioners appointed thereunder shall find that the property owner has been substantially damaged and that they shall find a substantial amount in his favor. The section is not so construed in the cases above cited. The statute, as construed by the Court, means that the commissioners must pass on the question of fact as to the damages alleged and the claim for compensation, and they may find that the claimant has suffered only nominal damages or no damages at all. This is necessarily implied in the opinion and judgment in the case of *Gibson* v. *Greenville,* 64 S. C. 455, 42 S. E. 206.

The appeal depends mainly on the exception assigning error in the exclusion of testimony offered for the purpose of showing that the laying of the cement sidewalk had increased, or at least had not impaired the value of Bramlett's property. The rule of law is established in this State that a change in the street grade or other change in a street to the damage of adjacent property is not a taking of private property for which a municipality is liable for damages under the provision of the Constitution forbidding the taking of private property for public use without just compensation. *Cherry* v. *Rock Hill,* 48 S. C. 553, 26 S. E. 798; *Garraux* v. *Greenville,* 53 S. C. 575, 31 S. E. 597; *Water Co.* v. *Greenville,* 53 S. C. 82, 30 S. E. 699; *Bramlett* v. *Laurens,* 58 S. C. 60, 36 S. E. 444; *South Bound R. R. Co.* v. *Burton,* 67 S. C. 515, 46 S. E. 340; *Kendall v. City of Columbia,* 74 S. C. 539, 54 S. E. 777.

Section 20 of article IX of the Constitution, which provides that for the taking of private property for the benefit of corporations compensation shall be made "irrespective of any benefits from any improvement proposed by such corporation," has no application to municipal corporations.

The right of the property owner to compensation for damages arising from the laying of a sidewalk depends in this case then entirely on the section of the charter of the city of Greenville above quoted. That section is silent on the question whether benefits conferred by the public improvements are to be set off against the damages, or taken into consideration in estimating the damages. The question is referred to but not decided in *Mauldin* v. *Greenville,* 64 S. C. 444, 42 S. E. 202.

In the absence of legislative regulation of the subject, the rule generally recognized as the just one where, as in this case, private property is not taken, but is damaged in the laying of a sidewalk or other public improvement, is that the owner can only recover his real damages, ascertained by taking into consideration the benefits conferred as well as the

injury inflicted. The question has been directly presented to the appellate courts of many other States, and with the single exception of the Supreme Court of Mississippi, all of them have decided that the benefits accruing to the landowner from the improvements should be set off against the damages. It is true that a number of courts of high authority have made a distinction between general benefit, that is, such as the landowner receives from the improvement in common with the general public, and special benefit, that is, such as the landowner receives as an individual separate from the general public; and have held that the general benefit should be disregarded and only the special benefit taken into account in estimating the damages. The cases so holding are cited in a note to Peoria B. & C. T. Co. Vance, (Ill.) 9 L. R. A. 781. This distinction is difficult and confusing in its application; for the line of demarkation between benefits enjoyed in common with the public and benefits peculiar to the individual is shadowy, and the two kinds of benefits so shade into each other that in practice it is often impossible to distinguish between them.

The question on which justice to the landowner depends is whether he has been made to suffer loss by reason of the construction of the sidewalk or other improvement. If the benefits of any kind, either general or special, received from construction of the sidewalk, equal or exceed the damage, then he has suffered no loss and there is nothing to compensate him for. This rule, which we think has the advantage of being just as well as simple, has been adopted by many courts of high authority. *Wolff* v. *Ga. Sou. & S. R. Co.* (Ga.), 20 S. E. 484; *Springer* v. *Chicago* (Ill.), 12 L. R. A. 609, 26 N. E. 514; *Micks* v. *Chicago* (Iowa), 50 N. W. 222; *Chase* v. *Portland* (Me.), 29 Atl. 1104; *Baker* v. *Boston E. R. Co.* (Mass.), 66 N. E. 711; *Bohm* v. *Metropolitan E. R. Co.* (N. Y.), 14 L. R. A. 344, 29 N. E. 802; *Chattanooga* v. *Geiler* (Tenn.), 13 Lea. 611.

The principle was involved and passed on in *Greenville & C. R. Co.* v. *Partlow,* 5 Rich. 528.   It was there held that when the benefits accruing to the landowner were to be taken into account in awarding damages to an owner for the taking of his land, all benefits, general as well as special, were to be estimated; the Court saying that compensation was all that the owner could in reason demand, that he could not have a premium, and that if his neighbors were more benefited than he might be, that was no loss to him.   This decision was made under a statute which provided that the owner should be compensated for the "excess of loss and damage over and above the benefit and advantage."

Under these principles the whole question of net damage suffered by the plaintiff was before the jury and any competent testimony throwing light on that issue was admissible.   A statement or agreement of the mayor as to the arrangement to be made for the satisfaction of the plaintiff was not conclusive of the matter, for this was not a suit on a contract for compensation, but a special proceeding to ascertain the compensation allowed by the law.   There was evidence offered by the plaintiff tending to show substantial damages.   To meet this proof it was the right of the city to introduce any competent evidence of the benefits accruing to the owner from the laying of the sidewalk; and it was error to exclude such evidence and instruct the jury to find a verdict for the amount claimed and testified to by the plaintiff as his damages.

It is the judgment of this Court that the judgment of the Circuit Court be reversed and the cause be remanded to that Court for a new trial.