June 29, 1917. The opinion of the Court was delivered by
This proceeding was instituted by the board of county commissioners of Pickens county, to condemn a certain strip of land for a public highway. W.T. Jeans, the mortgagee, was made a party defendant. The said board rendered judgment in favor of the defendants for the sum of $100, and they appealed to the Circuit Court. The jury rendered a verdict in their favor for the sum of $800, and the board of county commissioners appealed from the judgment entered on said verdict.
The first assignment of error relates to the charge of his Honor, the presiding Judge, in regard to the allowance of benefits under the statute. Section 1933, Code of Laws, 1912, provides:
"In assessing compensation and damages for rights of way, only the actual value of the land to be taken therefor, and any special damages resulting therefrom shall be considered, and due allowance shall be made for any special benefit which may accrue to the owner, including the value of the old road, if the same revert to such owner."
His Honor, the presiding Judge, charged the jury as follows:
"Now, the statute of this State provides that in assessing compensation and damages for such right of way for land, *Page 340 
so taken for a public highway, only the actual value of the land to be taken therefor, and any special damages, actually, naturally and proximately resulting therefrom shall be considered, and that due allowance shall be made for any special benefit, which may accrue to the owner of the lands, from the establishment of such new road, including the value of the old road, if such old road reverts to the owner of such lands, so to be taken for a new road. Under the statute, therefore, the appellants would be entitled to recover the actual value of the lands so taken for such public highway; and the appellants would also be entitled to recover, in addition to such actual value, any special damages actually, naturally and proximately resulting from such taking, and the building of such road, bridge, pier and abutments after making due allowance by way of compensation, by way of benefit, which accrued or will accrue to the owner from such new road being made, and also deduct any such benefit which such owner would receive from the abandonment of the old road if it reverted to him; that is, the appellant here. But the county would not be liable for any damages resulting from other causes than the building of such road and bridge, or not shown to have been caused by the building of such road, bridge, piers and abutments."
He also charged the following request of the plaintiff:
"That under the law the jury may assess damages only for the actual value of the land taken, and for any special damages resulting from such taking of the land, and shall make due allowance for any special benefit that may accrue to the landowner."
After charging the jury, his Honor, the presiding Judge, said, "Anything else, gentlemen?" The record shows that the following then took place:
"Mr. McSwain: I think it would be better to call your Honor's attention that if the jury should find that the benefit, special benefit to the land, overshadows, or overbalances, or even balances the value of the land that has resulted — *Page 341 
"Court: I don't think you can set off special benefit against the value of the land. I have already instructed them on the matter of special benefit. You cannot say that would be a just thing to say, `That I will take the land for nothing.' This, I think, holds to the contrary. If it is not, it ought to be."
This ruling is made the basis of an exception.
It is not contended by the appellant's attorneys that any special benefits accruing to the owner should not be allowed as against special damages resulting from the taking of the land, but that there was error in charging that special benefits could not be deducted from the actual value of the land.
There are two reasons why this assignment of error cannot be sustained:
In the first place, even conceding that under the case ofBramlett v. City Council, 88 S.C. 110, 70 S.E. 450, the last ruling was erroneous, such error was not prejudicial, when considered in connection with the other parts of the charge.
But there is even a stronger reason why the error was harmless. Unquestionably the main and practically the only issue before the jury arose out of the amount of special damages to be allowed the landowner. There was no testimony whatever in the record specifying any special benefits accruing to the owner, and only two witnesses made any reference to such benefits. One of them, Looper, said: "In my judgment the mill property in question has not been damaged, but has been benefited by the change of the road, and the building of the bridge."
The other, John Neely, said: "I have known the mill property in question for 28 years, and consider the change in the road and the building of the good bridge has benefited it rather than damaged it."
On the other hand, a part of the testimony showing the special damages resulting from the taking of the land, is as follows: *Page 342 
J.M. Freeman, one of the defendants, testified: "Before the change, the road ran to the left of the mill, and the bridge was about 200 yards below the mill. Now the road runs right above the mill door. There are two mills. There is one on each side of the creek. The one on the east side is used for a corn and wheat mill, and the one on the west side for a sawmill and cotton gin. They are about 200 yards apart. They have been ruined. The road runs about 2 feet from the corn mill door, and 41 feet from the sawmill door. The road runs 609 feet through my property, and it takes up our mill yard, and is above the mill door about 2 feet at the center of the road, and, water falling in the road, part of it would run to the millhouse. The county commissioners blasted the rocks out of the bed of the stream, and this caused the stream to spread and changed its course, and the effect has been to run sand on the wheel, and it is now 2 feet deep in sand, and renders it useless for grinding. The tailrace from the sawmill wheel is filled in with sand about 6 feet deep, for about 70 feet in distance, and if the sand were taken out, it would fill up again. I paid $4,200 for the property and consider it now worth about 25 per cent. of what it cost me, and that the damage is 75 per cent. of the cost."
W.T. Jeans, who formerly owned the property, testified:
"There are 48 acres in the tract, and I would hate to give $1,200 for it, in the present condition, and consider the damages in round figures $3,000."
Thomas Welborn testified: "In my judgment the change in the road will ruin the property. I know it would deaden the power of the water wheels, which are overshot wheels. I am satisfied the damage is $3,000."
There was other testimony to the same effect.
It will thus be seen that a reasonable inference cannot be drawn from the testimony that the special benefits exceeded the special damages, which his Honor, the Circuit Judge, charged could be set off, the one against the other. Therefore the question whether the special benefits could be *Page 343 
deducted from the actual value of the land is purely speculative.
In regard to the special damages, the presiding Judge charged the jury as follows:
"The special damage which the appellants claim will so result is alleged in their grounds of appeal to consist in the fact, as claimed by appellants, that the proposed new road did or will practically ruin the lumber yard on the lands in question, by excavating through it and rendering it too small for use as a lumber yard; that in building such new road the land was or will necessarily be excavated to a depth of several feet, leaving banks on each side of the road; that thereby great loss of custom to the mill on such lands of the owner will result; that the building of such road did or will destroy the water power on the west side of the creek, on the lands of such owner, by causing deposits of sand therein, as well as cause loss of custom to the mill on the east side of the creek, by high embankments on such road; and that the narrowing of the stream and the construction of piers and abutments to the bridge by the county, in building such new road, did or will with reasonable certainty cause sand to collect around the wheel of the mill, on the east side of appellant's land in question, and did or will with reasonable certainty practically destroy the mill, for any useful purpose.
"Those are the allegations for the appellants here, as stated in those grounds of appeal, and that is the issue here for your determination, upon that particular point.
"Now, it is your province to consider the evidence, which may have been adduced in support of these allegations of special damage, and determine whether or not any such special damage has been so proven by evidence, as having reasonably, naturally, and proximately resulted, or will with reasonable certainty so result from the building of such new road, bridge, piers and abutments, through the lands of such owner, the appellant here. But such special damage, if any, must be diminished by deducting therefrom any special benefit, *Page 344 
if there was any such, resulting to appellants from the building of such new road, and such special damage, if any, must also be diminished by deducting therefrom the value of the old road, if the old road was upon the lands of the appellant here, and did revert to the appellant."
The principles thus stated practically dispose of all questions raised by the other exceptions.
Affirmed.