### 10052

### WILSON v. GREENVILLE COUNTY.

#### (96 S. E. 301.)

1. EMINENT DOMAIN — DISCONTINUANCE OF HIGHWAY — DAMAGES. — Where county, as authorized by Civ. Code 1912, sec. 1932, discontinued highway through claimant's land and passed near his buildings, without closing it, claimant could not recover damages, though new highway was located at same time away from his buildings.

2. EMINENT DOMAIN—PROCEEDING FOR COMPENSATION—INSTRUCTION—"CONTIGUOUS"—"ADJACENT."—In proceedings against county to ascertain compensation for highway through claimant's land, instruction it was for jury to say whether claimant had received special benefits, etc., *held* erroneous in characterizing enhancement of value of land "adjacent" to road as general rather than special benefit; "adjacent" being used in sense of "contiguous," that is, touching or lying immediately on the road.

3. EMINENT DOMAIN—HIGHWAY—BENEFIT TO OWNER—ENHANCEMENT IN VALUE.—The enhancement in value of lands through which an improved highway is located is a benefit to the owner.

21—110.

4. Eminent Domain—Highways—General and Special Benefits.—
Benefits from highway improvement are general and special; gen-
eral being those enjoyed by all the community, and special being
peculiar to one or more persons by reason of location of their lands
with reference to highway.

5. Eminent Domain—General and Special Benefits.—To the extent
that benefits accruing to those owning lands on a highway exceed
those of their neighbors, whose lands are off the highway, such bene-
fits are special, and the fact that all persons owning lands adjacent
to the road enjoy special benefits does not make such benefits gen-
eral.

6. Eminent Domain — "Compensation" for Lands Taken — Special
Benefits.—In view of Const., art IX, sec. 20, under art. I, sec. 17,
owner of land taken by county for highway could recover as dam-
ages actual value of land taken only as reduced by special benefits;
"compensation," as used in art. I, sec 17, meaning balancing of bene-
fits against loss and damage.

Before Spain, J., Greenville, Fall term, 1917.    Reversed.
Proceeding by N. R. Wilson against Greenville County.
Judgment for claimant and defendant appeals.

*Mr. E. M. Blythe,* for appellant, cites: *As to right of
appellant to have special benefits to the land set off against
the value of the land actually taken:* 107 S. C. 337; Lewis
on Eminent Domain (3d Ed.), sec. 687; 9 L. R. A. (N. S.)
796 (note); 167 U. S. 548; Cooley Const. (6th Ed.) 697-
702; 2 Dillon Mun. Corp. (4th Ed.), paragraphs 624, 625;
Randolph on Eminent Domain, paragraphs 254-273; 88 S.
C. 110; 20 S. E. 484; 19 L. R. A. 609; 26 N. E. 514; 50
N. W. 222; 29 Atl. 1104; 66 N. E. 711; 14 L. R. A. 344;
N. E. 802; 13 Lea (Tenn.) 611; 6 Rich. L. 528; Constitu-
tion (1895), art. X, sec. 20; 88 S. C. 110; Const. (1895),
art. ——, sec. 17; Code of Laws, vol. I, sec. 1923.    *As to the
enhanced value of the land:* 67 Atl. 9; 57 N. W. 752-757;
29 N. E. 802-806; 120 Mass. 393; 21 A. R. 523; 225 Ill.
270; 88 N. E. 134; 43 W. Va. 62; 26 S. E. 341, 345; 45
S. W. 179, 182; 73 N. W. 176, 177; 29 N. E. 802, 806.
*As to claim of damage to plaintiff by house being left off the
new road:* Code of Laws, vol. I, sec. 1932; 53 S. C. 98; 53
S. C. 578.

*Messrs. Bonham & Price,* for respondent, cite : *As to taking private property for public use:* Const. (1895), art. I. sec. 17.  *As to the instruction to jury that they could not set off general benefits against special damages:* 15 Cyc. 773; 20 Am. Reports 522; 21 Am. Reports 522; 8 Atl. Rep. 596; 18 N. W. 328; 73 Pac. 290.

July 20, 1918.

The opinion of the Court was delivered by Mr. Justice Hydrick.

This is a proceeding to ascertain the compensation to be made for a right of way for a public highway through respondent's lands.   The old Buncombe road ran through his tract, which lies near the foot of the mountains, passing near his residence, store and outbuildings.   The county authorities decided to improve the highway, and found it necessary to relocate it, to get a satisfactory grade up the mountains.   The new road diverges from the old about half a mile south of his residence, and runs through his tract for the distance of three miles before it enters the old road again, leaving his residence and buildings some distance to the east of the new location.   The old road was not closed, but merely discontinued as a public highway.

The statute (section 1932, Civil Code) gives the county authorities "full power and authority to order the laying out and repairing of public roads where necessary, to appoint where bridges or ferries or fords shall be made, to discontinue such roads, bridges and ferries as shall be found useless, and to alter roads so as to make them more useful." Section 1933 gives the commissioners authority to open new roads and to widen or change the location of old roads, where in their judgment such change would be for the material interest of the traveling public.   It confers upon them the power to condemn rights of way for such purposes, and provides :

"In assessing compensation and damages for rights of way only the actual value of the land to be taken therefor, and any special damages resulting therefrom shall be considered, and due allowance shall be made for any special benefit which may accrue to the owner, including the value of the old road, if the same reverts to such owner."

The county contended that, under these statutes, respondent was not entitled to recover damages resulting to him from the discontinuance of the old road as a public highway, and that the special benefits accruing to him from the improvement should be set off against the value of the land taken, as well as the damages resulting from the taking. The Court overruled both these contentions, and, under the instructions given, the jury found the following verdict:

"We find for claimant, for land, $128; for damages, $172. We find no special benefit."

From the judgment entered, the county appealed, assigning error in the instructions given and in the refusal of instructions requested with regard to ascertaining the compensation, and the elements of benefit and damage to be considered by the jury in determining the amount thereof.

The Court erred in its ruling and charge whereby recovery was permitted for damages resulting from the mere discontinuance of the old road as a public highway. Its discontinuance was authorized by section 1932. The owner of land on a public highway has no property or other vested right in the continuance of it as a highway at the public expense. If damage results merely from its abandonment as a public highway, without its being closed, it is *dammum absque injuria*. *Cherry v. Rock Hill,* 48 S. C. 553; 26 S. E. 798; *Water Co. v. City,* 53 S. C. 89, 30 S. E. 699; *Garraux v. Greenville,* 53 S. C. 575, 31 S. E. 597.

Respondent's attorneys concede that such is the law, and that, if the old road had been merely discontinued as a public highway, without relocating it on respondent's land, he

would not be entitled to damages; but they contend that the abandonment of the old and the location of the new road on the same tract of land are so closely connected that they are inseparable. The contention is unsound. The two acts are separate and distinct in fact and in law, and the legal consequences are the same as if the old and the new road had been on the land of different owners.

The Court erred, also, in charging respondent's fifth request, to wit: "It is for the jury alone to say whether the plaintiff has received any special benefits, and if the jury finds that the building of the new road has enhanced the value of all timber lands adjacent to the road, and has caused a general enhancement in values to all property throughout that portion of the county, and has not especially enhanced the value of plaintiff's property, then the jury cannot offset this general benefit against the plaintiff's damages."

The request is somewhat involved in expression, but it speaks of the enhancement of two classes of lands: (1) All timber lands adjacent to the road; and (2) all property throughout that section of the county—and both are referred to as "this general benefit." The error consists in characterizing the enhancement of lands "adjacent" to the road as a general, rather than special, benefit. The word "adjacent' was evidently here used in the sense of "contiguous;" that is, as touching, or lying immediately on, the road.

The enhancement in value of lands through which an improved highway is located is a benefit to the owner. *Railway Co. v. Partlow,* 5 Rich. 428. The proposition is so well recognized that, in some circumstances, it is made the ground of assessing the owner to pay for it, at least in part. The benefits derived from such improvements are classed as general and special. The general are such as are enjoyed by all people in the community. The special are such as are peculiar to one or more persons by reason of the more favorable location of their lands with

reference to the highway. Those who own lands immediately on a highway derive advantages which are not shared by others in the same community. These special benefits usually find concrete expression in a comparatively greater increase in the value of such lands, though that may not be, and often is not, the only special benefit which they enjoy. But certainly, to the extent that the benefits accruing to those who own lands on the highway exceed those of their neighbors whose lands are off the highway, they are special. A benefit that is limited in enjoyment to one or more persons is special to him or them. Therefore the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it.

The Court held that, in so far as it allows or requires the value of the land taken to be offset by special benefits, the statute is unconstitutional, and instructed the jury that they might set off damages against the special benefits, but, in any event, respondent was entitled to recover the actual value of the land taken. Respondent insists that this instruction was correct, but, if not, that it was harmless, because the jury found that there were no such benefits. That would be so, if the jury had not been erroneously instructed as to what they might consider special benefits. But for that error, they might have found that respondent did receive enough special benefit to offset the damages found and the value of the land taken. Moreover, as a new trial must be had, because of the other error pointed out, it is important that the point be decided now, so that the next jury may find a verdict under proper instructions.

It was decided in this State, as early as 1796, that, in the absence of a constitutional requirement that compensation

should be made, the legislature has the power, in the exercise of the State's right of eminent domain, to take private lands for public highways without compensation. *Lindsay v. Commissioners,* 2 Bay 38; *Stark v. McGowan,* 1 Nott & McC. 397; *Patrict v. Commissioners,* 4 McCord 541; *State v. Dawson,* 3 Hill 100. In Lindsay's case, the Court said:

"Every freeholder, holding lands under the State, holds them upon condition of yielding a portion of them, when wanted for the public roads and highways."

In *State v. Dawson* (decided in 1835) this right of the State was reaffirmed, after elaborate consideration by all the Judges of the State, and it appears from numerous statutes that the legislature exercised this right for nearly 200 years, from the days of the lords proprietors until the adoption of the Constitution of 1868. Since that time, we have had of force the constitutional provision that private property shall not be taken for public use without just compensation.

But the Constitution does not define just compensation, or prescribe how it shall be made, except where the taking is for the use of a private or quasi public corporation. The present Constitution contains two provisions on the subject. Section 17 of article I provides that "private property shall not be taken * * * for public use without just compensation being first made therefor;" and section 20 of article IX provides that "no right of way shall be appropriated to the use of any corporation, until full compensation therefor shall be first made to the owner or secured by a deposit of money, irrespective of any benefit from any improvement proposed by such corporation," etc. Similar provisions were in the Constitution of 1868. Article I, sec. 23; article XII, sec. 3. The provision last quoted was not intended to apply to municipal corporations. On the contrary, by the terms of section 1 of the article, they are expressly excluded *Bramlett v. City Council,* 88 S. C. 110, 70 S. E. 450. As we have already seen, prior to the adoption of these provi-

sions, private property could be taken for a purely public purpose, such as a highway, without compensation, and even when taken for a quasi public purpose, such as railroads, compensation could be made to the owner in benefits, general as well as special. *Railroad Co. v. Partlow, supra; White v. Railroad Co.,* 6 Rich. 47; *Bramlett v. City, supra.*

The marked difference between the provision of section 17 of article I, which is applicable to municipal corporations, and those of section 20 of article IX, which are applicable to private or quasi public corporations, is significant, especially so when considered in the light of the previously existing law, and it clearly warrants the inference of an intention that a different rule with regard to the consideration of benefits as compensation must be applied in the case of taking for a quasi public purpose from that which may be applied when the taking is for a purely public purpose. Else why expressly exclude benefits in the one case and not in the other? The exclusion in the one strongly implies the right to include them in the other. And it is but reasonable and just that such a difference should be made in favor of the State and its governmental agencies. While, on one hand, no citizen should be deprived of his property without fair compensation, or be made to contribute more than his equitable proportion of the expense of such improvements, on the other hand, there is no reason or justice in allowing any citizen to obstruct public improvements and progress, unless he is enriched at the public expense. In that event, he would not contribute his fair proportion of the public burden.

In many instances, the building of a highway through lands is the very thing that gives them value and brings them into market. For this reason, the owners of considerable bodies of lands in or near cities and towns usually donate or dedicate the streets or highways necessary to subdivide them into marketable lots. But if the public convenience should require a street or highway through such property, upon

what principle of justice can it be said that the owner must be paid the actual value of the part taken for the highway, even though the improvement benefits him far in excess of the value of the land taken? If, in constructing the high-way, "a valuable spring is drained, whereby the remainder of his land is depreciated $500, it is conceded that just compensation must include this $500. But if, instead of draining a valuable spring, it drains a marshy tract, so as to make it worth $500 more for actual use, the same sense of justice requires that this $500 of benefits should be considered. It seems to us that there is no answer to this position." Lewis Em. Dom., sec. 471.

The Court ruled that benefits might be set off only against damage to the remainder. Damage to the remainder is always held to be a part of the taking, and, therefore, to be included in the compensation for the taking. The Court has so held in numerous cases in which landowners have been denied the right to recover for damages, except for negligence in the use, on the ground that they are included in the compensation. *Bowen v. Railroad Co.,* 17 S. C. 574; *Nunnamaker v. Water Power Co.,* 47 S. C. 485, 25 S. E. 751, 34 L. R. A. 222, 58 Am. St. Rep. 905, and cases cited by the Court. Indeed damage alone may constitute a taking. Is the land taken, or its value, more sacred or important than the damage to the remainder? Can the part be greater than the whole? As pointed out by Mr. Lewis in the section above quoted in taking private property for public use, the State is not a trespasser or wrongdoer. It acts rightfully and within its sovereign powers. As we have seen it has the power to take private property for purely public purposes without compensation; but it has seen fit, in justice and equity, to guarantee just compensation. But it guarantees nothing more. The word "compensation" seems to have been used advisedly. It means the balancing of things against each other; the balancing of benefits against loss and damage. *Young v. Harrison,* 17 Ga. 30, 42. Therefore,

when part of a tract is taken, just compensation cannot be determined without considering the manner, purpose and effect of the taking upon the remainder, in so far as these produce benefit as well as loss and damage, and if the former exceeds the latter, just compensation has been made.

While the precise point now under consideration was not involved in *Bramlett v. City*, 88 S. C. 110, 70 S. E. 450, yet in that case this Court adopted the general principle that, where the benefits equal or exceed the loss and damage, compensation has been made.    It was there said:

"The question on which justice to the landowner depends is whether he has been made to suffer loss by reason of the construction of the sidewalk or other improvement.    If the benefits of any kind, either general or special, received from construction of the sidewalk, equal or exceed the damage, then he has suffered no loss, and there is nothing to compensate him for.    This rule, which we think has the advantage of being just as well as simple, has been adopted by many Courts of high authority" (citing many cases).

The ordinance construed in that case allowed the consideration of general as well as special benefits; but, as we have seen, in this case, the statute allows only special benefits to be considered.    But the principle involved of ascertaining and determining compensation is the same.    While the decisions of the Courts of the different States, construing practically the same constitutional provisions, are conflicting, yet, as Mr. Lewis, in the section above quoted, says, "there can be but one absolutely correct rule," and we venture to think that the conclusion which we have reached is in accord with that rule, and is sustained by the weight of reason and authority.    It is the rule adopted by the Supreme Court of the United States and a majority of the States, and it has the approval of the most eminent text writers. *Bauman v. Ross*, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; Cooley, Const. Lim. (7th Ed.) 820, *et seq.;* 3 Dillon Mun. Corp.

(5th Ed.), secs. 1061-1062; Lewis Em. Dom., sec. 465, *et seq.;* 10 R. C. L. tit. "Em. Dom.," secs. 139-142.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and GAGE concur.

MR. JUSTICE FRASER, *dissenting.* I cannot concur in the opinion of the majority of the Court. The Constitution (article I, section 17) says:

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

The compensation for the taking of land for a public highway, derived from benefits, is prospective. The benefit does not come until after the taking, and after the road is completed. The Constitution, in my judgment, requires the compensation to be made before the taking, and to allow the compensation to be made afterwards is in conflict with the Constitution. This is a question of statutory construction, and I think it should be so construed as to make it conform to the requirements of the Constitution.