## THE METROPOLITAN WEST SIDE ELEVATED RAILROAD CO.

### *v.*

### MINNIE A. WHITE *et al.*

5:86 Fed 756

166   375|
76a   597|
166   375|
77a   531|
166   375|
181   246|
166   166|
88a   134
166   375|
f94a   ²202|
166   375
96a   ¹542
166   375|
196   ¹170
196   ⁴510|
166   375|
104a   ⁵190|
166   375
115a   ¹321

*Filed at Ottawa November 9, 1896—Rehearing denied May 11, 1897.*

1. NEW TRIAL—*any existing cause may be urged for new trial under a general motion.* Where a motion for a new trial is general, and no special grounds for granting the same are stated therein, the party filing the motion may urge any existing cause in its support; but the other party may, on motion, have a rule entered requiring the specific grounds relied upon to be stated.

2. ELEVATED RAILROADS—*eminent domain—how value of property condemned may be shown.* In condemnation by an elevated railroad company, witnesses who know the property and are competent to give an opinion may testify as to how its value will be affected, and as to their previous observation of the effect of elevated railroads upon the value of adjacent property.

3. SAME—*manner in which other particular pieces of property are injured cannot be shown.* Witnesses living upon or owning realty adjacent to elevated railroads may testify as to the manner in which such railroads generally affect the rental and market value of adjacent property, but they cannot testify as to how their particular property was specially injured.

4. DAMAGES—*damages to land not taken must be real and substantial.* Where a portion of a tract of land is taken by condemnation, damages cannot exist as to the part not taken, if there is no loss or injury which lessens its value.

5. SAME—*special benefits are those which appreciably enhance the value of the property.* Special benefits, to be considered by the jury in assessing the damages to land not actually taken, must be such as flow from the improvement and affect the market value or use of the land, and such as can be measured and computed.

6. SAME—*special benefits need not differ from those common to other property.* In determining whether land not actually taken by condemnation has been damaged, the jury should consider whether the market value of the property remaining has been enhanced by the improvement, even though other property in the vicinity would generally be likewise benefited.

7. TRIAL—*improper, on argument, for attorney to hand jury tabulated statement of damages claimed.* It is not proper practice for an attorney, in arguing a condemnation suit, to hand to the jury a tabulated statement prepared by him, not in evidence, showing the amount of damages he claims and the manner of computation.

APPEAL from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

This is a proceeding instituted by appellant for the condemnation of certain premises for its right of way, described as follows: The west nineteen feet of lots 5 and 6, in sub-block 1, of Page & Wood's subdivision of block 50, canal trustees' subdivision of section 7, township 39, north, range 14, east of the third principal meridian. The petitioner sought to condemn the east five feet of the west nineteen feet of lot 5 of the premises above described, and the respondents, by cross-petition, claimed damages to the remaining portion of said premises not taken.

It appears that the appellee Minnie A. White has a ninety-nine-year lease, dated August 1, 1884, upon the above described premises, for which she is to pay an annual rental of three pounds, seven ounces, ten pennyweights and eighteen grains, troy weight, of pure gold per annum, amounting to about $888.16. The entire property in question covered by the said lease has a frontage of 64.16 feet on Lake street at the south-east corner of Page, with a depth running back 146.5 feet to an alley. At the time of the execution of this lease the following improvements were situated upon the premises: A two-story brick building, No. 647 West Lake street, upon the west nineteen feet of lot 5, five feet of which was the property sought to be taken by the petitioner. This building was about nineteen feet wide and fifty feet long, including the extension upon the rear, and stood upon wooden sills. Two frame buildings, Nos. 649 and 651 West Lake street, one and one-half and two stories, respectively, about forty by twenty-two feet each, were located on the west forty-five feet of this property and immediately adjacent to the west nineteen feet, and a one-story frame cottage was located at No. 6 Page street. After obtaining possession of the lease the lessee had

erected an ordinary three-story and basement brick flat-building about fifty-four feet long (including the rear porches) and fifty-five feet wide, at Nos. 8 and 10 Page street. The petitioner conceded that the taking of the east five feet of the brick building at No. 647 West Lake street practically destroyed it, and introduced evidence as to the value of the entire building.

The Lake street elevated railroad, a double-track elevated railroad, is now, and was for more than a year prior to the trial of this cause, operated upon the center of Lake street, directly in front of this property, Lake street being eighty feet wide at this point. By taking the five feet the railroad company takes a portion of the rear porches of the flat-building at Nos. 8 and 10 Page street. The lower porch is about nine feet in width, and the porches to the two upper flats are about seven feet in width, and the taking by the railroad company leaves all of these porches of less width. Said Lake street is a through street and Page street a short street, running from Madison to Lake street,—a distance of about four blocks. Appellees filed a cross-petition claiming damages to the leasehold interest in the entire property. Petitioner's road must cross the Lake street road, and along these premises will be at a great elevation and a steep grade. On a trial the compensation and damages to appellee Minnie A. White were assessed at $13,931.77.

There are in the record four bills of exception—that of appellant and three filed by appellees. The appellant assigns error in the admission and exclusion of evidence, in giving and refusing instructions, and in allowing counsel for appellees, during his argument, to submit for examination certain tabulated statements in writing as to the damages and compensation claimed, and that the damages are excessive. The appellees assign cross-errors because the court allowed a motion for new trial to be filed *nunc pro tunc* after the term at which final judgment had been rendered, and in striking from the files certain

affidavits filed in behalf of appellees, and in refusing to strike from the files the motion for a new trial.

E. J. HARKNESS, and ADAMS A. GOODRICH, (W. W. GURLEY, of counsel,) for appellant.

NEWMAN & NORTHRUP, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On the motion of appellant for leave to restore record and supply motion for a new trial, affidavits were filed by appellant's counsel, and counter affidavits on the part of appellees. Leave was granted, and an order was entered to file the motion *nunc pro tunc*, and to strike from the files the affidavits filed by appellees. The latter then moved to strike from the files the motion for new trial, which was denied. The contention on the part of appellees is that no motion for new trial was in fact filed, and in argument counsel for appellant, before the trial court, relied on the fact that the damages were excessive, and hence waived all other questions.

The rule is, where a party files his motion for a new trial and specifies the grounds of his motion, then he is confined to those specified and set forth in the motion, but when the motion is general and no special grounds are stated the party filing the motion may insist on a new trial for any existing cause. The reason for the rule is, the other party can, of his motion, have a rule entered requiring specific reason to be stated in the motion. (See *Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath*, 91 Ill. 104.) If no written motion was entered and no motion for specific reasons, then there was no waiver of any ground for new trial entered of record by appellant. By filing the motion *nunc pro tunc* the appellant will be confined to the causes therein stated, and this could not prejudice the appellees. The cross-errors assigned by the appellees cannot, therefore, be sustained.

On the trial appellees sought to show by witnesses who resided adjacent to other elevated roads and who had realty so adjacent, how elevated roads affected their property. Some of the witnesses answered, but this evidence was held improper by the trial judge and stricken out. In cases of this character witnesses who know the property and are competent to give opinions as to its value may testify as to how its value would be affected, and their previous experience, observation and knowledge of the manner an elevated road affects adjacent property as to its rental and market values may be shown, as that experience, observation and knowledge may show the testimony of the witnesses is entitled to greater effect and weight. The knowledge and observation of a witness may be proven. It is not proper, however, to show how other property was specifically injured. (*Metropolitan Elevated Railroad Co.* v. *Dickinson*, 161 Ill. 22.) To deny a witness the right to possess this knowledge before testifying would be to require him to be ignorant of the subject matter about which he testified. To deny the right of having that experience and observation shown to the jury would be .to take away from them the means of weighing the evidence. We do not find there was error in the admission of evidence. No error in the exclusion of evidence is pointed out in appellant's argument.

It is next urged there was error in giving and refusing instructions. For the purpose of determining the question of damage to property not taken, the court gave two instructions at the request of the owner of the leasehold. These instructions are numbered 31 and 38, and as given in the abstract. are as follows:

31. "The jury are instructed, as to the leasehold interest of Minnie A. White, that in estimating the damages, if any, they believe, from the evidence, will be suffered to her leasehold interest in that portion of the premises held by her under her lease and not taken by the petitioner, the jury should not take into consideration

any general benefits which may be common to and shared in by the property generally in the vicinity of the proposed railroad, by affording conveniences for travel to and from the heart of the city, or otherwise, but in estimating the net result of damages or benefit, if any, to the part of the property held by her under her lease not taken by the petitioner, the jury should take into consideration only such special benefit, if any they believe is shown by the evidence, as would result to the property of Minnie A. White over and above such benefits, if any they believe, from the evidence, have been shown, as might accrue to the other property in the vicinity, generally."

38. "The court instructs the jury, as to the leasehold interest of Minnie A. White, that if the jury should believe, from the evidence, that her leasehold interest in that portion of the premises not taken will be damaged by the construction and operation of the road along the east side of said premises, and the casting of smoke and cinders upon the property, and danger of fire therefrom, and the escaping of steam, and noise of stopping and starting trains and the noise of passing trains, and the jarring of the buildings by such trains, if any, and that the construction and operation of the road will confer upon the property no benefits except such as are common to other property along the line of road and in the vicinity thereof, then and in that case the jury should so find, and they should assess the damages at such sum as the jury may believe, from the evidence, will accrue thereto independent of all such benefits which are common to other property, if any."

In *Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362, a review of cases theretofore decided by this court was made, and it was said in that case (p. 382): "By a practically unbroken line of decisions in this State it is well settled that the test, under the present statute, as to whether land not taken is damaged, is the effect of the improvement upon the value of the land.  Under

the rule, land is said to be damaged only when there is a diminution in its value,—a depreciation in its price or worth,—and the compensation required to be made is the amount of depreciation or diminution in value occasioned by the construction and operation of the railroad or other improvement. Special benefits are such benefits flowing from the proposed public work as appreciably· enhance the value of the particular tract of land alleged to be benefited. As already said, the fact that other property in the vicinity is likewise increased in value from the same cause,—that is, also specially benefited by the improvement,—furnishes no excuse for excluding the consideration of special benefits to the particular property in determining whether it has been damaged or not, and if it has, the extent of the depreciation in value. (*Wilson* v. *Board of Trustees*, 133 Ill. 443; *Bohm* v. *Metropolitan Elevated Railway Co.* 129 N. Y. 576; *Rigney* v. *City of Chicago*, 102 Ill. 64.) On the one hand, the damages must be real and substantial; on the other, the benefits must be such as affect the market value or use of the land, and such as are capable of measurement and computation. Hence, all imaginary and merely speculative damages or benefits are excluded from consideration. The consideration of such benefits as tend specifically to enhance the value of the particular property is not setting off benefits against the damage to the property, but is the simple ascertainment of whether the land has been in fact depreciated in its price or worth,—that is, whether loss or damage has resulted to the owner,—for if his property is of the same value after as before the improvement he has sustained no loss. If he has lost nothing,—if his property has not been depreciated in price or value,—it is not damaged, within the meaning of the constitution, and there can be no recovery. There can be no damage to property without pecuniary loss or injury which lessens its value."

We adhere to the rule as above stated. Damages can not exist if there is no loss or injury which lessens the

value of the property not taken.   By these two instruc-
tions, if the property would sell for a greater sum because
of the improvement, still that could not be taken into
consideration in determining the question of damage or
benefits if other property would generally be likewise
increased in value.   As held in the *Stickney case,* above
cited, "property may be specially benefited by an im-
provement and at the same time other property upon
the same improvement be likewise specially benefited."
This principle is disregarded in these two instructions,
and in this there was error.

Instruction No. 23, as asked by petitioner, was:

"General benefits which will be common to the public
at large, and which will not affect the market value of
the property in question, you should not consider, but
any effect of the construction and operation of the rail-
road which you may believe, from the evidence, will tend
to prevent its construction and operation from decreas-
ing the market value of the remainder not taken of the
property below what it would be if the railroad were not
constructed, you may and should consider."

The court modified this instruction so that as given
it read as follows:

"General benefits which will be common to the public
at large you should not consider, but any effect of the
construction and operation of the railroad which you
may believe, from the evidence, will tend to prevent its
construction and operation from decreasing the market
value of the remainder not taken of the property below
what it would be if the railroad were not constructed,
you may and should consider."

This modification also disregarded the principle an-
nounced in the *Stickney case,* and was erroneous.

Objection is taken to the refusal of other instructions,
but we will not extend this opinion by their discussion.

It is urged that it was error to allow counsel for the
owner of the leasehold, whilst arguing the case, to hand

to the jury tabulated statements of the amount he urged as to the damages sustained, etc.   We are not disposed to sustain this practice.

Finally, it is strenuously urged the damage assessed by the jury was excessive.   We refrain from a discussion of this question, as it will have to go before another jury.

For the errors indicated, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*