## CITY OF CHICAGO v. BAKER.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1898.)

No. 458.

1. MUNICIPAL CORPORATIONS—POLICE POWER—CLOSING STREETS.

An ordinance closing a street in Chicago at the place where it was crossed by a railroad track was not an exercise of the police power of the city, and, if property is injured by such closing of a street, the owner is entitled to damages.

2. SAME—ILLINOIS STATUTE.

Rev. St. Ill. c. 145, § 1, provides compensation for damage caused to property by the vacation of a street or alley; and if, before that enactment, the vacation of a street was an exercise of police power, for which there was no right of compensation, the statute abolished that doctrine.

3. SAME—DAMAGES.

In Illinois it is not essential to a right of action against a city for damages sustained by closing a street that the property alleged to be injured should abut the closed portion of the street.

86 F.—48

4. SAME—EVIDENCE.

   In an action for damages to property by the closing of a street, proof of decrease in rental value of neighboring property is not admissible.

Error to the Circuit Court of the United States, Northern District of Illinois, Northern Division.

T. J. Sutherland, for plaintiff in error.

Clarence S. Darrow, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The defendant in error was given judgment against the city of Chicago, in the sum of $5,000, for damages caused to property on the southwest corner of Clark street and Twenty-First street by the vacation of the latter street where crossed by the tracks of the Lake Shore & Michigan Southern and the Chicago, Rock Island & Pacific Railway Companies. Besides the city, those companies were made defendants to the action, and damage attributed to the elevation of their tracks, as well as to the vacation of the street, was claimed; but, under the peremptory instruction of the court, those companies were found not guilty.

The radical proposition of the plaintiff in error, that "the ordinance, under which Twenty-First street, near the plaintiff's premises, was closed, was passed by the city in the exercise of its police powers, and hence no right of action accrued to the plaintiff by reason of the same, or of any acts done in pursuance thereof," we do not deem tenable. The right to regulate the use of streets is recognized to be a police power, but no decision has been cited, and we know of none, in which it has been held or said that the power to vacate streets is of that character; and, as we conceive, it could not be regarded as of that quality in a particular instance because exercised in connection with the exercise of another power conceded to be of that kind, like the power to compel the elevation of railroad tracks. When in this instance the city determined that the railroad tracks adjacent to the property of the defendant in error should be elevated, it was a matter of choice on the part of the city, and was made a matter of agreement between the city and the railroad companies, what streets should have subways, and what should be closed; and, when it was determined that Twenty-First street should be closed where crossed by the railroad tracks, if there resulted to the property of the defendant in error a special injury, for which he was otherwise entitled to compensation, it would be an exceedingly harsh and unjust conclusion to say that the harm resulted from the exercise of a police power, and was therefore damnum absque injuria, or remediless. If there could have been doubt on the question, it was removed by an act of the legislature of Illinois (section 1, c. 145, Rev. St. Ill.), which, after defining the "power to vacate or close any street or alley, or portion of the same," provides that, "when property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law." Instead of this meaning no more than the constitutional provision that "private property shall not be taken or damaged for public use without just compensation," etc., it is a specific provision that there shall

be compensation for damage caused to property by the vacation of a street or alley, or a portion thereof; and if before that enactment the vacation of a street could have been regarded as an exercise of police power, for the injurious results of which there could be no right of compensation, the statute to that extent abolished the doctrine, and established the rule for such cases that the individual, when sacrificed for the benefit of the public, shall not go unrecompensed.

The second proposition advanced is that the plaintiff had no cause of action because the closed portion of the street was not adjacent to his property; but, while it is conceded that no one can recover for an injury suffered in common with the public, it is not essential to the right of action, under the decisions in Illinois, that the property alleged to have been injured should abut upon the vacated portion of the street.    See Rigney v. City of Chicago, 102 Ill. 64; City of Chicago v. Union Building Ass'n, Id. 379; Littler v. City of Lincoln, 106 Ill. 353; City of East St. Louis v. O'Flynn, 119 Ill. 200, 10 N. E. 395; Chicago Anderson Pressed-Brick Co. v. City of Chicago, 138 Ill. 628, 28 N. E. 756; Parker v. Catholic Bishop, 146 Ill. 158, 34 N. E. 473; City of Chicago v. Burcky, 158 Ill. 103, 42 N. E. 178.    While no part of Twenty-First street within a rod of the property of defendant in error was closed, yet egress and ingress which had existed to and from the west were cut off, leaving no immediate communication with the next cross street in that direction; and in that respect, at least, he suffered a special inconvenience in the use and enjoyment of his property, for which he should receive compensation.    Whether there were other elements of special injury, we do not decide.    The mere cutting off of travel along the street would seem to be a common injury, for which individual relief is not allowed.

It remains to consider whether the court erred in the admission of testimony.    Witnesses were permitted to testify that the rents paid for neighboring properties were less after than before the vacation of the street.    Under decisions in New York, directly in point, this testimony was incompetent.    Jamieson v. Railway Co., 147 N. Y. 322, 41 N. E. 693; Witmark v. Railroad Co., 149 N. Y. 393, 44 N. E. 78.    But it is argued that in Illinois the evidence was competent, because "it is the well-settled rule in Illinois that the proof of sales of property similarly located is competent evidence, as bearing on the question of the value of property sought to be taken or damaged." The cases referred to are Culbertson & Blair Packing & Provision Co. v. City of Chicago, 111 Ill. 551; Elmore v. Johnson, 143 Ill. 530, 32 N. E. 413; Peoria Gaslight & Coke Co. v. Peoria Terminal Ry. Co., 146 Ill. 372, 34 N. E. 550; Railroad Co. v. Haller, 82 Ill. 208, and cases there cited.    When the question is of the value of a particular property the rule seems to be general, though not universal, that proof may be received of sales of other like properties similarly situated. Lewis, Em. Dom. § 443.    When there has been an actual taking of property, and the value thereof is directly and necessarily in issue, the pertinency and force of such evidence are so apparent that the propriety of admitting it has been generally recognized; and it has been held in some instances to be proper for the purpose of showing the value of property damaged and not taken, though in such cases the value of

the property injured is not in direct issue, and can be of incidental importance only. The issue in that class of cases is the amount of damage done to the property,—the depreciation in its value attributable to the cause complained of; and the light thrown on that question by the sales of other property, though competent, it is clear must be uncertain. In Hohmann v. City of Chicago, 140 Ill. 226, 230, 29 N. E. 671, it was said:

"To make the evidence of any value, it would be necessary to show a substantial identity of conditions in all respects; but no offer was made to do that, if, indeed, proof of that character would have been possible."

In Railroad Co. v. Haller, supra, it was said:

"What the property would sell for before and after the road was constructed would be one of the modes of ascertaining the damages, if the price was shown to be reduced by reason of the building of the road. But it would not be the only means of determining the question. So would its rental value be another, where the property was held for rent, but the latter mode would not be a proper criterion where it was not held for that purpose. If there was no other property of the same value or description in the place, which had been sold, then other modes would have to be resorted to than the proof of the sale of such property before and after the damage done."

The plain implication here is that the evidence of rental values of the property injured, only, is admissible. That being so, there can, of course, be no evidence of that character when the property is not held for the purpose of rent. It is to be observed, in passing, that the declaration in this case does not show the existence of buildings on the premises of the defendant in error, nor for what purposes the lots had been used. In Railroad Co. v. White, 166 Ill. 375, 46 N. E. 978, the court, after stating the character of evidence which is admissible in such cases, said, "It is not proper, however, to show how other property was specifically injured." No case in Illinois or elsewhere has been cited wherein it was held that proof of rental values of other properties than that in direct issue was competent. We cannot believe that evidence of that character can, in general, be promotive of just conclusions, and it is beyond doubt that the evidence offered in this case was deceptive and misleading in its tendency. It was doubly so because the reductions in rents which were shown were attributed by the witnesses largely to an increase of dust, cinders, smoke, and steam, credited to the elevation of the railroad tracks, and not solely to the vacation of the street; and neither by the evidence, nor by the instructions of the court, was the jury furnished a basis for determining to what extent the rental values proved were affected by the vacation of the street alone. It is therefore impossible to say that the evidence was harmless. Our holding is that it was incompetent. The judgment below is reversed, with instruction to grant a new trial.