## 15888

CITY OF ROCK HILL *ET AL.* v. COTHRAN *ET AL.*

(40 S. E. (2d), 239)

*Messrs. Gaston & Hamilton,* of Chester, for Appellants,

*Messrs. Spencer & Spencer* and *Wilson & Wilson,* all of Rock Hill, for Respondents,

*Messrs. Gaston & Hamilton,* of Chester, for Appellants,

November 15, 1946.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous opinion of the Court.

This controversy arose out of the action of the municipal council of Rock Hill in closing a portion of Laurel Street, and involves a claim for damages and loss by the defendants as the owners of property abutting on a section of this street not vacated.

Laurel Street is two blocks in length. It extends from West Main Street in an Easterly direction, intersects West White Street, and terminates at Ebenezer Avenue, with which it forms a right angle. The appellants are the owners of a parcel of land at the corner of Laurel Street and Ebenezer Avenue, with a frontage of 110.5 feet on Ebenezer Avenue and 151.7 feet on Laurel Street. Immediately adjoining the back line of appellants' property on the West are the tracks and right-of-way of the Southern Railway, which crosses Laurel Street at approximately right angles.

On August 20, 1945, the City Council of Rock Hill, upon the petition of the Rock Hill Printing and Finishing Company, usually referred to as the Bleachery, duly adopted a

resolution vacating and closing that portion of Laurel Street running from West White Street Eastward to the railroad right-of-way. Appellants' property, extending from the Eastern side of the railroad right-of-way to Ebenezer Avenue and abutting on Laurel Street as stated, for a distance of 151.7 feet, was thereby left in a *cul de sac.* The Bleachery owns the property on the corner across Laurel Street from appellants' property and owns all the remainder of the property in the vacated block on both sides of Laurel Street from the railroad right-of-way to West White Street, which latter street intersects Laurel Street at right angles and leads to the business section of the city.

.On that portion of their property fronting on Ebenezer Avenue, the appellants own a store building operated as a mercantile establishment and rented to and occupied by a merchant as tenant. To the left of the store building they own and occupy an apartment building in which they live, and rent to tenants other apartments therein.

The matter of closing that portion of Laurel Street extending from West White Street to the railroad right-of-way was initiated by the Bleachery in 1943. It set forth in a petition addressed to the council that its manufacturing plant was located on both sides of Laurel Street, and that it owned all of the property on each side of the block in question from West White Street to Ebenezer Avenue, except the property of the appellants. That in the operation of its plant it was necessary for its employees to constantly cross from one side of the street to the other with loaded hand trucks and other modes of transportation, causing a constant interruption in the traffic on this heavily traveled street, which not only created an increasing hazard to its employees, but also to pedestrian and vehicular traffic. It was also shown that due to the expansion of the business of the Rock Hill Printing and Finishing Company, it had erected additional buildings in connection with its extensive developments, on both sides of Laurel Street, and that it

would be for the benefit of the company and of the public to vacate and close the portion of Laurel Street in question.

No action was taken in connection with this petition by the City Council until June 18, 1945. Prior to its meeting on this date the Council published notices in the Rock Hill newspapers to the effect that at its meeting it would take up for discussion the question of closing that portion of Laurel Street referred to, and to hear at such time all citizens who would attend and give their views in support of or in opposition to the proposed vacation of a section of the street.

At the meeting of the Council on June 18th numerous citizens appeared, including the appellants, who had previously addressed a letter of protest to the Council. The question of the necessity and advisability of closing the street was discussed in detail, with reference to its advantages to the city from the standpoint of public welfare, improvement and convenience. The appellants opposed the vacation of the street, stressed the damage which they would suffer in their property rights if their property abutting on Laurel Street from Ebenezer Avenue to the railroad right-of-way should be left in a blind alley; and objected to the closing of the street, which had been an established thoroughfare for more than thirty years. They asserted that to vacate the portion of the street involved would completely block them from the business section of Rock Hill by way of Laurel Street; would of necessity entirely stop all traffic on such street to their disadvantage, and would deprive them of the opportunity for the full utilization of all of that portion of their property abutting on Laurel Street, resulting in the depreciation in value of their entire lot. Appellants emphasized that they would sustain damage differing in degree and in kind from all other members of the public.

By the act of the legislature adopted in 1892, a charter was granted to the city of Rock Hill. Section II of this charter is as follows:

"The city council of Rock Hill shall have full power and authority to open new streets in said city, and to close up, widen or otherwise alter those now in use, or which may hereafter be established, whensoever in their judgment the same may be necessary for the improvement or convenience of said city. Should the landowner or owners through whose premises such street or streets may run refuse his or her or their consent to such action of the city council in opening, closing up, widening or altering such street or streets, the said city council shall have the right to take possession of all such land, and remove all obstructions necessary to carry out the provisions of this section, upon paying to the owner of such land such damages as shall be fixed and determined by five freeholders of said city, two of whom shall be chosen by the said city council, two by said land owner or owners, and the fifth by the persons so chosen, and who, before assessing said damages, shall be sworn to do impartial justice between the said city of Rock Hill and the land owner or owners; provided, that in case the land owner or owners through whose premises any proposed street is to be run or to be changed in accordance with the provisions of this section refuse to choose two freeholders as herein provide, after being noticed to that effect, then the city council may select two freeholders for him or her or them, with the same power to act in assessing said damages as if chosen by said land owner or owners, and the decision of a majority of said freeholders shall be final."

At the public meeting of City Council on June 18, 1945, numerous citizens favored the closing of that portion of Laurel Street in question because of the danger and increasing hazard to the public in the use of the street, with special reference to its constant use by school children in going to and from school. It was likewise shown that the additional buildings erected and to be erected on both sides of Laurel Street in the expansion of the business of Rock Hill Printing and Finishing Company would not only add to the taxable values of the city and give employment to several thou-

sand employees, but that this company was by far the largest individual taxpayer in the city of Rock Hill.

The merits of the proposed change were considered by the city council until its meeting on August 20, 1945, when it adopted the resolution closing Laurel Street from West White Street to the railroad right-of-way. This action was subject to the condition, among others, that the Bleachery would bear the cost of paving that section of Wilson Street lying one block South of Laurel Street and extending from Ebenezer Avenue to West White Street. The resolution of city council further provided that the unclosed Northeastern end of Laurel Street extending from the railroad right-of-way to Ebenezer Avenue should never be used for vehicular traffic.

Following the action of City Council, the appellants instituted an action against the city of Rock Hill, the members of the City Council, and the Rock Hill Printing and Finishing Company, for damages for the taking of their property and for injunction, alleging in effect what we have already narrated. Inadvertently Chester County was named as the venue of the action, which by order of the Circuit Court was changed to York County.

Prior to the change of venue the city of Rock Hill and the members of City Council brought the instant action, alleging substantially what we have hereinabove recited, and contending that the closing of that section of Laurel Street Westward from the railroad right-of-way to West White Street upon which the property of the appellants did not abut, did not constitute a taking of private property for public use, and that the only rights which the appellants had in the closed part of the block was the right to which they were entitled in common with all citizens using this part of Laurel Street as a public highway. It was further alleged that if the loss of this right resulted in damage to them it was not different in kind from that suffered by the general public; but that if the appellants desired to press their claim for dam-

ages and compensation they were relegated exclusively to the remedy set forth in Section II of the Charter of the city of Rock Hill.

The whole controversy as embodied in the two actions referred to came before his honor Judge Sease upon motion of both parties, as a result of which the appellants were restrained and enjoined from seeking redress and relief in the action brought by them. It was further held that if it should be found in the action brought by the city of Rock Hill and the members of council against appellants (the current case) that appellants are of right entitled to compensatory damages for the closing of Laurel Street, then they would be confined to the sole and exclusive remedy contained in the charter of the city of Rock Hill.

Appellants do not question the power and authority of the municipal authorities under the charter of the city of Rock Hill to close or vacate streets for the public benefit or convenience, but they contend that the lower court erred in failing to hold that the dominant and paramount purpose of closing the portion of Laurel Street in question was to benefit the Rock Hill Printing and Finishing Company, a private manufacturing corporation.

The law undoubtedly is that a municipality cannot vacate a street or a part thereof for the sole purpose of benefiting an abutting owner; and that the power to vacate streets cannot be exercised in an arbitrary manner, without regard to the interest and convenience of the public or individual rights. The mere fact, however, that the vacation was at the instigation of an individual or a private corporation who owns abutting property, to enable him or it to use the vacated portion in his business, does not of itself invalidate the vacation, nor constitute such fraud or abuse of discretion as, in the absence of any further showing, will authorize a court of equity to interfere and declare the vacating resolution to be void. McQuillin, Munic. Corp., 2nd Ed., Vol. 4, Sec. 1520.

The fact that some private interest may be served incidentally will not invalidate the vacation resolution.

On the other hand, it must appear clearly that no consideration other than that of public interest could have prompted the action. If it appears that the vacation is a mere attempt to alien or otherwise dispose of the public right and interest for a private use, the courts will protect the public right. In such case the court will look beyond the recitals of the ordinance or resolution or the declarations of the members of the municipal council and examine the results and surrounding circumstances to learn the real purpose of the proposed action. *Ibid,* Section 1520.

While it appears from the record that the vacation was granted ón the petition of the Rock Hill Printing and Finishing Company, it is equally clear, in our opinion, that in adopting the resolution the council did not act in an arbitrary manner, without regard to the interest and convenience of the public. The resolution does not so recite, but it is implicit in the action taken by council that it considered that the vacating of a portion of Laurel Street on the showing made to it would be primarily for the public good and secondarily beneficial to the abutting property owner.

It is self-evident that the mere fact that the vacation will cause a reversion of the land to the Bleachery for its private use, does not show that the vacation was for a private as distinguished from a public purpose, since if that were the rule and the vacation invalid in such case, the power to vacate would be entirely cut off whenever a property owner, such as the Rock Hill Printing and Finishing Company, owning property ón each side of the street ordered to be closed would be the sole beneficiary of such action. McQuillin, Munic. Corp., 2nd Ed., Vol. 4, Section 1520.

In this case it may reasonably be inferred that the city council in vacating the portion of the street in question was primarily influenced by a sound conception of the interests which would constitute public improvement

and public convenience. By closing a portion of one block of Laurel Street, they were moved to do so on the record, in order to enlarge the resources, increase the industrial energies of the city, and promote the productive power of a great number of the inhabitants of Rock Hill, in addition to eliminating a dangerous grade crossing and the hazard to school children; and generally to pedestrian and vehicular traffic.

It is next insisted that the lower court erred in failing to hold that the vacation of a portion of the street in question constituted a taking of appellants' property in a constitutional sense and depriving them of a valuable property right which they would otherwise enjoy as appurtenant to their lot abutting on Laurel Street. That when the street was vacated by the city of Rock Hill, such vacation constituted a taking of their property and they were therefore entitled to compensation under Article I, Section 5 and Article 1, Section 17 of our Constitution and the Fourteenth Amendment of the Constitution of the United States.

The right of a landowner to recover damages because of the vacation of a street depends on the location of his land with reference to the street vacated, or the part of the street vacated, and the effect of such vacation on his rights as an abutting owner. It is well settled that an owner is not entitled to recover damages unless he has sustained an injury different in kind and not merely in degree from that suffered by the public at large. If it appears that there is a special injury, the owner may recover damages notwithstanding his property does not abut, as in this case, on the part of the street vacated, because this amounts to a "taking". McQuillin, Munic. Corp. 2d Ed., Vol. 4, Sec. 1525; *Houston v. West Greenville*, 126 S. C., 484, 120 S. E., 236.

In the absence of special injury, no recovery will be allowed. The test is, not whether the property abuts, but whether there is a special injury, and the first practical question which presents itself is whether one whose

property does not abut immediately on the part of the street vacated—the part vacated being in the same block between his property and the next connecting cross street—is so specially injured as to be entitled to recover compensation on the ground that his access is cut off in one direction, but not in the opposite direction.

We held in *Houston v. West Greenville,* 126 S. C., 484, 120 S. E., 236, that the right of an abutting landowner to passage at least to the next intersection is a substantial property right; that such right is not conditioned on the use of the street in common with the public generally, and that the closing of the street was an interference with this right and a "taking" of property within the meaning of the constitutional provisions.

In the case of *Cherry v. Rock Hill,* 48 S. C., 553, 26 S. E., 798, it did not appear that the plaintiff's land was in the block along which a portion of the street was vacated; the inference to be drawn from that case, as reported, is that such was not the case. For that reason, the principle announced in the *Cherry case* has very little application here, where the appellants' property abuts upon a block a portion of which is vacated between it and the next street intersection. It is not a question whether the land adjoins the vacated portion or not, but rather will its value be impaired if deprived of one of the immediate means of access to it.

In this case what was originally an open thoroughfare along the entire line of appellants' property fronting on Laurel Street, was by the action of the City Council turned into a *cul de sac.* The great tide of traffic and travel which formerly flowed by appellant's property has been artificially diverted to another street. No other property was damaged on the block in question or affected in the same way. The property of the general public was not affected like appellants', nor were the damages sustained by the public of the same kind.

It is true that in the case at bar the property of appellants is a corner lot fronting on Ebenezer Avenue, and access would not be cut off from either direction on that street, but we do not think that the fact that appellants' property is a corner lot would affect the situation if they have suffered special damages. It is clear here that by the closing of Laurel Street between West White and the railroad right-of-way, the value of appellants' property abutting on the unvacated portion of Laurel Street has been depreciated. The fact that they have access by way of Ebenezer Avenue is one to be considered in estimating the damages to be awarded. This was so held in *Chicago v. Baker* (1898), 30 C. C. A., 364, 58 U. S. App., 569, 86 Fed., 753; *Illinois C. R. Co. v. Moriarity* (1916), 135 Tenn., 446, 186 S. W., 1053. And see Annotations, 49 A. L. R., 359, 93 A. L. R., 644.

It is alleged that prior to the action taken by City Council appellants' property fronting on Laurel Street was so situated that it was available as lots for business purposes, but that after the action of the city, it was rendered useless for that purpose. If this be true, then the taking would result in special injury.

Finally, it is argued that the lower court erred in holding that appellants, in order to establish their legal right to damages, are relegated to the procedure set forth in Section II of the charter of the city of Rock Hill as their exclusive remedy and procedure.

The Statutory charter pleaded by the plaintiff in the case at bar cannot be held to provide the necessary essentials to satisfy the due process provisions of the Constitution.

In the case of *City of Spartanburg v. Belk's Department Store of Clinton,* 199 S. C., 458, 20 S. E. (2d), 157, the court said:

"In our opinion, under the provisions of Article I, Section 17, of the Constitution of 1895, it is left to the legis-

lature to enact procedure by which private property may be condemned for public use, together with the means by which just compensation is to be made. The act now under consideration fully provides these essentials. Since, in our opinion, the act itself is adequate in the issues now before us, our next consideration is whether the respondent complied with the terms and requirements of the act itself."

In that case it was recognized that it was necessary first to determine whether the act fully and adequately provided the necessary essentials of due process. The Rock Hill charter is admittedly deficient in this. Insofar as the statutory charter attempts to provide the procedure by which private property may be "taken", or by which just compensation should be paid, it lacks the necessary essentials for this purpose.

Nor do we think that the provisions of the Constitution of 1895 and amendments thereto could be held to be self-executing so as to amend and cure the charter deficiencies.

The property owners' common-law remedy is not barred where the statutory remedy is incomplete or inadequate, and where there is no valid provision in the charter to indicate that the remedy there provided is exclusive. The closing of a portion of Laurel Street by the city of Rock Hill constituted a "taking" of appellants' property within the meaning of the Constitution, and the appellants are not barred from their remedy at common law.

We think it clear that appellants' previously instituted action was not in tort, but was brought to question the right of eminent domain for the taking of private property and for compensation for such taking. Nor should appellants have been restrained and enjoined from seeking redress by the common-law action previously instituted by them.

An injunction will not ordinarily be granted in one action to restrain proceedings in the same court in another action, whether at law or in equity, unless it

appears clearly that the full justice and relief to which complainant is entitled cannot be obtained in the prior pending action. 43 C. J. S., Sec. 47, Page 498.

We see no reason why the city of Rock Hill and the members of City Council would suffer any disadvantage by pleading all of their defenses, legal or equitable, in the action brought by the appellants against the city of Rock Hill, the members of City Council, and the Rock Hill Printing and Finishing Company, and obtaining therein any relief to which they may be entitled. It follows, therefore, that the trial judge was in error in adjudging and ordering that appellants be enjoined from proceeding with their common-law action against the defendants herein named.

The defendants in the last-named action are hereby given twenty days after the filing of the remittitur, within which to answer or otherwise plead.

Judgment reversed.

Mr. Chief Justice Baker and Messrs. Associate Justices Stukes, Taylor and Oxner concur.