STANDARD OF REVIEW

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jimmy Mantekas and Pete Mantekas,       
Respondents,
 
 
 

v.

 
 
 
South Carolina Department of Transportation,       
Appellant.
 
 
 

Appeal From Greenville County
Larry R. Patterson, Circuit Court Judge

Unpublished Opinion No. 2005-UP-008
Heard November 7 2004  Filed January 
 10, 2005

AFFIRMED

 
 
 
Beacham O. Brooker, Jr., of Columbia; and John Robert Devlin, 
 Jr., of Greenville, for Appellant.
H. W. Paschal, Jr., of Greenville, for Respondents.
 
 
 

PER CURIAM:  The South Carolina 
 Department of Transportation (SCDOT) appeals a jury award in favor of landowners, 
 Jimmy and Pete Mantekas, on their cause of action for inverse condemnation.  
 We affirm.
FACTS
Jimmy and Pete Mantekas own commercial 
 property in Greenville fronting Old Easley Bridge Road, which came to a dead 
 end just west of their property.  Had Old Easley Bridge Road not ended, it would 
 have intersected U.S. 123 at an angle.  Just east of the dead end and across 
 from the Mantekas property, motorists created a cut-through, providing access 
 between U.S. 123 and Old Easley Bridge Road.  At some time prior to 1971, this 
 cut-through was paved and a stop sign erected.  Importantly, SCDOT denies the 
 cut-through is a state maintained road.  
DOT constructed a chain link fence, curb, and grassy area 
 permanently blocking the cut-through and all other access between U.S. 123 and 
 Old Easley Bridge Road as part of a highway project designed to create a new 
 entrance ramp onto U.S. 123.  The Mantekases sued SCDOT under a theory of inverse 
 condemnation for impact the loss of access had on their property value.  
The trial court discussed presenting a special 
 verdict form to the jury, stating: 

I think that if they find as a fact in this case that [the 
 cut-through] was an extension of Old Easley Bridge Road, the I am going to rule 
 as a matter of fact that the property abuts under the Cothran case, and 
 if it were [sic] closed and they had  if its a cul-de-sac, then they need 
 to determine damages.

The special verdict form was presented 
 to the jury without objection and read as follows:

 
 
 
 1.
 
 
 Do you find the [cut-through] was an extension of Old Easley Bridge Road?
 
 
 
 
                  
 Yes
 
 If yes, GO TO QUESTION 2.
 
 
 
 
 
                  
 
 No
 
 If 
 no, STOP AND DO NOT 
DELIBERATE FURTHER.
 
 
 
 
 2. 
 
 Find $ ____________ just compensation for the taking of property.
 
 
 
 

As a result of the special verdict 
 form, the jury implicitly determined liability, i.e. whether a taking had occurred, 
 by answering the first question in the affirmative.  The jury further determined 
 $55,001 to be just compensation.  SCDOT appeals.
ISSUES

 I.      Whether the trial court erred in submitting the question of a taking to the 
 jury?
 II.      Whether the trial court erred in finding the Mantekas property abutted the cut-through 
 section of Old Easley Bridge Road?
 III.      Whether the trial court erred in failing to find special injury?
 IV.     Whether there was any basis in fact to determine the Mantekases suffered special 
 injury?

LAW/ANALYSIS
SCDOT argues the court erred in submitting 
 the question of a taking to the jury.  Specifically, SCDOT argues the existence 
 of a taking is an equitable matter that must be tried before the court alone 
 whereas the amount of just compensation is a legal matter to be determined by 
 a jury.  We find this issue is not preserved for our review.  
The trial court, citing City 
 of Rock Hill v. Cothran, 209 S.C. 357, 40 S.E.2d 239 (1946) [1] , determined that if the jury 
 found the cut-through was an extension of Old Easley Bridge Road, then the Mantekas 
 property abutted Old Easley Bridge Road, and the Mantekases had suffered special 
 injury entitling them to just compensation.  The jury then determined by means 
 of the special verdict form, that the cut-through was an extension of Old Easley 
 Bridge Road and the Mantekases were entitled to $51,000.   SCDOT made no objection 
 to the submission of the special verdict form, in fact SCDOT specifically requested 
 the special verdict form in the manner submitted by the trial judge to the jury.  
 Therefore, we find the issue of whether the trial court erred in submitting 
 any question going to the existence of a taking to the jury not preserved 
 for our review.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 
 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for 
 the first time on appeal, but must have been raised to and ruled upon by the 
 trial judge to be preserved for appellate review.); Horn v. Davis Elec. 
 Constructors, Inc., 302 S.C. 484, 487, 395 S.E.2d 724, 725-26 (Ct. App. 
 1990) (finding that parties to an equitable action may consent to submit issues 
 of fact to the jury).  
Moreover, we find SCDOTs following 
 two issues on appeal not preserved for review.  SCDOT asserts the trial court 
 erred (1) in finding the Mantekas property abutted Old Easley Bridge Road because 
 his statement on the law and special verdict form reflected a misreading of 
 relevant case law, and (2) the trial court erred in failing to find special 
 injury.  Both of these issues could have been raised to and ruled upon by the 
 trial judge at the time he discussed presenting a special verdict form to the 
 jury.  However, instead of objecting to the special verdict form, SCDOT consented 
 to it and specifically requested the form in the manner presented to the jury.  
 Therefore, we decline to address these issues.  See Wilder Corp., 
 330 S.C. at 76, 497 S.E.2d at 733; Horn, 302 S.C. at 487, 395 S.E.2d 
 at 725-26.  
SCDOT also argues the trial 
 court erred in charging the jury on special injury.  However, while SCDOT objected 
 to the form of the charge initially, the trial judge made corrections to his 
 charge and SCDOTs counsel responded, I have no further exception on the charge.  
 Thus, this issue is similarly not preserved for our review.  See Murray 
 v. Bank of America, N.A., 354 S.C. 337, 346, 580 S.E.2d 194, 199 (Ct. App. 
 2003) (It is certainly true that an appellant who failed to object to a jury 
 charge at the first opportunity cannot complain about the charge on appeal.). 

Lastly, SCDOT argues there is 
 no basis in fact to determine the Mantekases suffered special injury. 
 [2]   We disagree.
Judy Gilstrap, a real estate 
 broker, testified the neighborhood is partially residential and the closing 
 of the street would actually benefit residential property owners, but harm commercial 
 property owners by limiting the amount of traffic approaching the businesses.  
 Likewise, SCDOTs expert witness testified the Mantekases had a corner lot prior 
 to the street closing and they now have what was effectively an interior lot.  
 He further testified corner lots offer greater visibility and access and carry 
 a greater value in the market place.  Finally, he calculated the loss of value 
 as $55,000.  This testimony specifically provides evidence of the Mantekases 
 special injury, which is different in kind and not merely degree from that suffered 
 by the public at large.  See generally Gray v. S.C. Dept of Highways 
 and Public Transp., 311 S.C. 144, 152, 427 S.E.2d 899, 903-04 (Ct. App. 
 1992) (The critical question was whether the closing of the intersection affected 
 the value of Grays property in some special way not common to other property 
 in the area. The evidence showed Grays property abuts on the intersection that 
 was closed . . . .  Grays property was peculiarly suited for this use because 
 of its location at the intersection. Thus, there was evidence from which the 
 jury could find that he was specially damaged . . . .).
 AFFIRMED.
 HEARN, C.J., GOOLSBY and WILLIAMS, 
 concur.

 
 [1] In Cothran, the City closed a portion of Laurel Street.  
 Landowners owned property abutting Laurel Street, but not fronting the portion 
 of the street closed by the City.  The Landowners sued alleging the vacation 
 of the street, which formally afforded them a great tide of traffic and travel, 
 amounted to a taking entitling them to just compensation.  209 S.C. at 370, 
 40 S.E.2d at 243.  The judgment was in favor of the city and the Landowners 
 appealed.  The supreme court determined that [i]f it appears that there is 
 a special injury, the owner may recover damages notwithstanding his property 
 does not abut, as in this case, on the part of the street vacated, because 
 this amounts to a taking.  Id. at 368, 40 S.E.2d at 243 (citation 
 omitted).  
 The court determined there was special injury for the Landowners because what 
 was originally an open thoroughfare along the entire line of [Landowners] 
 property fronting Laurel Street, was by action of the City Council turned 
 into a cul de sac.  Id. at 370, 40 S.E.2d at 244.  The court further 
 determined special injury occurred because neither the other property on the 
 block nor the property of the general public was similarly affected.  Id.  
 Therefore, the Cothran court found the actions of the City amounted 
 to a taking of Landowners land, entitling them to just compensation.  Id.

 
 
 [2] SCDOT assumes for purposes of this argument only that the scope of 
 review is the any evidence standard applicable to factual determinations made 
 by a jury.  See Horn, 302 S.C. at 487, 395 S.E.2d at 726 (reviewing 
 the factual findings of the jury in an equitable action to determine if there 
 was any evidence to support the findings).